ORIGINAL

FILED
AUG 11 2006
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

MADEN TECH CONSULTING, INC.

Plaintiff,

v.

THE UNITED STATES

Defendant,

No. 06-585 C

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff, Maden Tech Consulting, Inc., d/b/a Maden Technologies ("Maden Tech"), as and for its Complaint against the Defendant, the United States of America, acting by and through the Defense Advanced Research Projects Agency ("DARPA"), alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff seeks declaratory relief against the United States, acting by and through the Defense Advanced Research Projects Agency ("DARPA"), in an order declaring that DARPA's override of the automatic stay of contract performance issued in the Government Accountability Office ("GAO") Protest B-298543.2 is arbitrary and capricious and violates 31 U.S.C. § 3553(d)(3) of the Competition in Contracting Act ("CICA"). Plaintiff also seeks preliminary and permanent injunctive relief against the United States, acting by and through the Defense Advanced Research Projects Agency ("DARPA"), in an order enjoining DARPA from continuing performance of Contract No. HR0011-06-C-0127 (the "Contract") for contractor support services for the Office of Management Operations/Security and Intelligence Directorate of DARPA until GAO fully reviews Maden Tech's protest of the contract award.

2. Maden Tech is not requesting a determination on the underlying merits of its bid protest by this Court, and continues to pursue its challenges to the contract award at the GAO.

## PARTIES

3. Plaintiff, Maden Tech Consulting, Inc. d/b/a Maden Technologies ("Maden Tech") is a corporation with its principal place of business at 2110 Washington Boulevard, Suite 200, Arlington, Virginia 22204. Maden Tech is the incumbent on the contract preceding the Contract (the "predecessor contract"). Maden Tech has successfully performed all work under the predecessor contract.

4. The Defendant is the United States, acting by and through the Defense Advanced Research Project Agency ("DARPA").

5. The awardee, Beta Analytics International, Inc. ("BAI"), is a subsidiary of Analex Corporation.

## JURISDICTION

6. This Court has jurisdiction over this action challenging DARPA's override of the automatic stay pursuant to 28 U.S.C. § 1491(b).

## FACTUAL ALLEGATIONS

**The Solicitation**

7. On February 13, 2006, DARPA issued Solicitation No. HR0011-06-R-0001 (the "Solicitation" or "RFP") seeking offers to provide services required to support the Security and Intelligence Directorate, which is under the Office of Management Operations (collectively, "SID"). The awardee was to provide and manage personnel and equipment, to include support provided to the contractor by subcontractors and consultants, to safeguard DARPA, U.S. Government and other resident property, personnel, and information, and to assure the continuity of the DARPA work effort.

8. The Solicitation stated that a contract would be awarded to the responsible offeror whose proposal was determined to be the most advantageous to the Government, cost and other

factors considered. That determination was to be made on a best value basis utilizing the trade off process where the technical factors combined were significantly more important than price.

9. The evaluation scheme of the Solicitation provided that the technical proposals were to be evaluated by the non-cost factors of Technical Approach, Personnel, and Past Performance. Technical Approach and Personnel were of equal importance and were both of greater importance than Past Performance. The technical factors combined were significantly more important than the Cost/Price factor. The evaluation criteria also stated that although the non-cost factors were significantly more important than cost/price, the importance of cost/price as a factor in the final determination increased as non-price factors of the proposal become closer in merit.

10. The Solicitation contemplated the award of one Cost-Plus-Award-Fee ("CPAF") contract with a one-year base and four one-year option periods.

11. The Solicitation also contemplated an award/start date of April 10, 2006. Amendment 0003 was issued on April 17, 2006, changing the award/start date to June 1, 2006. Amendment 0004 was issued on May 31, 2006 changing the expected award date to June 15, 2006, with an expected start date of July 1, 2006.

**The Award and Protest**

12. On Wednesday, July 19, 2006, DARPA notified Maden Tech that it awarded the Contract to BAI.

13. Upon receipt of the award notification, Maden Tech immediately requested a debriefing in accordance with 48 C.F.R. § 15.506. In response to Maden Tech's request, DARPA held an oral debriefing on Friday, July 28, 2006.

14. Maden Tech filed a protest with the GAO on July 31, 2006, and the GAO provided notification of the protest within five days of the debriefing. Pursuant to 31 U.S.C. § 3553 and 48

C.F.R. § 33.104(c)(1), DARPA was required to suspend performance of the Contract pending disposition of the GAO protest.

15. Another offeror, STG, Inc., also filed a protest of the Contract award to BAI with the GAO on July 28, 2006. This protest is also currently pending before the GAO. The GAO has not consolidated the two, separate protests of the award to BAI.

16. GAO is required by 31 U.S.C. § 3554(a)(1) and 48 C.F.R. § 21.9(a) to resolve the protest within one hundred days from the date a protest is filed, in this case on or before November 8, 2006.

## The Stay Override and Subsequent Challenge by Maden Tech

17. On August 1, 2006, DARPA issued an initial Determination and Findings ("D&F"), overriding the statutory stay of performance and permitting BAI to perform the disputed Contract while Maden Tech and STG's protests were pending at the GAO. DARPA contended that lifting the stay was necessary based on urgent and compelling circumstances.

18. In its initial Determination and Findings, DARPA stated:

a. The Defense Advanced Research Projects Agency (DARPA) is the requiring activity. DARPA needs support services in developing, implementing and maintaining programs that facilitate the secure and successful accomplishments of its mission while protecting DARPA.

b. The mission of DARPA is to serve as the central research and development organization of the Department of Defense with a primary responsibility to maintain U.S. technological superiority over potential adversaries. DARPA is responsible for many secret and top secret programs.

c. DARPA is responsible for:

Arranging for the performance of, and supervising the work connected with, DARPA projects assigned to the Military Departments, other U.S. Government activities, individuals, private business entities, educational institutions, or research institutions, giving consideration to the primary functions of the Military Departments.

Engaging in assigned advanced research projects.
32 CFR § 358.4(d) (e).

d. DARPA's Office of Management Operations (OMO)/Security and Intelligence Directorate (SID) supports this mission by planning, executing, and directing the information, personnel, industrial, information assurance, and physical security programs at DARPA headquarters and at specified contractor sites. This includes Sensitive Compartmented Information (SCI), Special Access Programs (SAP), and classification management activities. OMO/SID also formulates and implements security policy and procedures at DARPA and represents DARPA on security matters with external organizations. In fulfilling this responsibility, OMO/SID desires support services in developing, implementing and maintaining programs that facilitate the secure and successful accomplishments of its mission while protecting DARPA personnel, information and property, and that are consistent with DARPA Mission, Public Law, National Policy, applicable Executive Orders, and Department of Defense Directives and Regulations. These support services are the requirements of subject solicitation and contract.

19. In support of its determination that urgent and compelling circumstances required continued performance of the Contract awarded to BAI, DARPA merely stated in the D&F that the "contract cannot be delayed pending the disposition of the protest. (See paragraphs "a" through paragraph "d" above)."

20. In addition, DARPA contended in the D&F that:

> DARPA cannot have the previous contractor, Maden, to continue performance because the Federal Court of Claims determined that the award to Maden was arbitrary and capricious. To ask Maden to continue performance would not be in the best interest of the Government and would endanger the integrity of the procurement system by continuing an award the court has determined unlawful. In addition, if DARPA wanted to continue the performance by Maden, permission from the Federal Court of Claims would be required.

21. The August 1, 2006 D&F stated that "[t]he award to Beta Analytics International, Inc. requires the contractor to be responsible for supplying critical security services to DARPA and in turn to the national security. I determine that urgent and compelling circumstances significantly affecting the interests of the United States will not permit waiting for the decision of the Comptroller General."

22. On August 4, 2006, DARPA issued a Supplemental Determination and Findings ("Supplemental D&F") summarizing additional missions and responsibilities of the agency as follows:

a. The mission of DARPA is to serve as the central research and development organization of the Department of Defense (DoD) with a primary responsibility to maintain U.S. technological superiority and prevent, through radical innovation for national security, technology surprise that could weaken the United States.

b. DARPA is responsible for: Engaging in assigned advanced research projects and supplying technological options for the entire Department of Defense (DoD). The Agency is designed to be the "technological engine" for transforming the DoD. DARPA looks beyond today's known needs and requirements. As military historians note: "*None* of the most important weapons transforming warfare in the 20th century – the airplane, tank, radar, jet engine, helicopter, electronic computer, not even the atomic bomb – owed its initial development to a doctrinal requirement or request of the military. None of them". To this list, DARPA would add some compelling national security capability that includes unmanned systems, stealth, global positioning system (GPS) and Internet technologies. The future strength and preparedness of the United States and DoD depends upon the success of this technology engine and the continued generation, acceleration, and protection of radical innovation.

c. DARPA's Office of Management Operations (OMO)/Security and Intelligence Directorate (SID) supports this vital mission by planning, executing, and directing the information, personnel, industrial, information assurance, and physical security programs at DARPA headquarters and at specified contractor sites. These critical security services form the foundation and provide the protective blanket that wraps and preserves each new idea generated by the "technology engine" in accordance with Executive Order and DoD Security Policy. This includes the full range of classified information from Seret Collateral to Top Secret and Unacknowledged Special Access Programs fed by intelligence at the Sensitive Compartmented Information (SCI) level.

d. For the direction, administration, and oversight of the DoD Information Security Program to ensure that its program is efficient, recognizes assigned authorities and responsibilities, and that appropriate management safeguards are in place to prevent fraud, waste, and abuse. This includes active oversight, classification, declassification, and security education and training programs to ensure effective implementation of DoD 5200.1-R.

23. The August 4, 2006 Supplemental D&F stated:

"in fulfilling these nationally important responsibilities, it is absolutely critical to the agency's mission for security support services to be in place. The award to Beta Analystics International, inc. requires the contractor to be responsible for supplying

> critical security services to DARPA and in turn to national security. I determine that urgent and compelling circumstances significantly affecting the interests of the United States will not permit waiting for the decision of the Comptroller General. Thus, there is an urgent and compelling reason why I have determined that the override of the automatic stop work order is required.

24. The two basic justifications in the D&F and the Supplemental D&F (collectively, the "Combined D&F") for overriding the CICA automatic stay of performance offered by DARPA were the mission and responsibilities of the agency and an Order of this Court determining that the prior award to the incumbent, Maden Tech, was arbitrary and capricious.

25. On August 7, 2006, Maden Tech challenged the validity of the Combined D&F in a separate case pending before this Court, *Beta Analytics International, Inc. v. United States*, No. 04-556C, through an Emergency Motion for Declaratory Judgment to Reinstate the Automatic Stay in Intervenor's GAO Protest, and For Leave to Amend This Court's Order Of March 15, 2006 (the "Motion"). The Motion challenged DARPA's reliance on previous Orders of this Court as a justification to override the automatic statutory stay.

26. On August 8, 2006, Judge Wolski of this Court issued an Order (the "August 8th Order") granting Maden Tech's Motion in part, agreeing that DARPA's reliance on the prior Orders of the Court as a basis for overriding the statutory stay of performance was improper.

27. In the August 8th Order, Judge Wolski also denied the Motion without prejudice, stating that Maden Tech would be required to "file a new case in our Court challenging the override, to be assigned randomly to another judge of our Court."

28. After the issuance of the August 8th Order, the only remaining justification in DARPA's Combined D&F to support alleged "urgent and compelling circumstances" for overriding the statutory stay is the mission of the agency.

29. DARPA's remaining justification for overriding the stay of performance does not meet the requirements of CICA to override the automatic statutory stay. The remaining reason



4822861

relied on by the agency to lift the automatic stay is arbitrary and capricious, an abuse of discretion and otherwise in violation of law.

30. The Combined D&F makes the blanket statement that it is critical to the agency's mission for security support services to be in place. DARPA ignores, and makes no attempt to explain, why Maden Tech, the contractor that had been supplying these services since March 2004, is incapable of continuing to provide these services for another three months until GAO issues its protest decision.

31. The remaining basis for lifting the automatic stay also fails to establish why the public interests in ensuring competition in contracting and a fair and effective process at the GAO is outweighed by simply describing the roles and responsibilities of an agency, particularly were DARPA already had an incumbent contractor in place to perform the required security support services.

**COUNT I**
**(Declaratory and Injunctive Relief)**

32. Maden Tech incorporates by reference the allegations set forth in paragraphs 1 through 31 as if set forth herein.

33. A justiciable controversy exists between DARPA and Maden Tech as to the validity of the determination to override the mandatory stay of contract performance required by the Competition in Contracting Act.

34. DARPA's decision to override the automatic stay of contract performance pending the outcome of a bid protest was arbitrary, capricious, an abuse of discretion, and otherwise in violation of the Competition in Contracting Act.

35. The decision to override the stay of performance did not adequately consider the statutory mandate of ensuring competition in contracting and a fair and effective process at the GAO, as required by the Competition in Contracting Act.

36. The Combined D&F offered no explanation or analysis as to why urgent and compelling circumstances required that the contractor currently performing the work could not remain in place pending resolution of the corresponding bid protests.

WHEREFORE, Maden Tech requests a declaratory judgment that the decision to override the statutorily required stay of contract performance was arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Maden Tech, respectfully requests that this Court grant judgment in its favor, and grant the following relief:

(1) a declaration that DARPA's decision to override and lift the automatic stay of performance was arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law, and therefore is invalid;

(2) a preliminary and permanent injunction prohibiting DARPA from permitting performance of the Contract until the completion of the protests pending before the Government Accountability Office;

(3) an award to Maden Tech of its reasonable fees, costs, interest, and expenses incurred in prosecuting this Complaint; and

(4) such other relief as the Court may deem just and proper.

Dated: August 11, 2006

Respectfully submitted,

T. Michael Guiffré
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6441
(202) 457-6315 (Fax)

Attorney of Record for
Maden Tech Consulting, Inc.

Of Counsel:
Robert S. Brams
Elizabeth M. Gill
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000
(202) 457-6315 (Fax)