IN THE UNITED STATES COURT OF FEDERAL CLAIMS

MADEN TECH CONSULTING, INC. )
)
Plaintiff, )
)
v. ) No. 06-585 C
)
THE UNITED STATES )
)
Defendant, )
)
)

MEMORANDUM IN SUPPORT OF
MOTION FOR TERMPORARY RESTRAINING ORDER,
PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

Pursuant to Rules 7 and 57 of the Rules of the Court of Federal Claims, Plaintiff Maden Tech Consulting, Inc. ("Maden Tech"), by counsel, hereby submits its memorandum in support of its Motion for a Temporary Restraining Order, Preliminary Injunction and Declaratory Relief.

## INTRODUCTION

Plaintiff seeks declaratory relief against the United States declaring that the Defense Advanced Research Projects Agency's ("DARPA") override of the automatic stay of contract performance issued in the Government Accountability Office ("GAO") Protest B-298543.2 is arbitrary and capricious and violates 31 U.S.C. § 3553(d)(3) of the Competition in Contracting Act ("CICA"), setting aside the invalid override decision, and reinstating the automatic stay. Plaintiff also seeks preliminary and permanent injunctive relief against the United States, acting by and through DARPA, in an order enjoining DARPA from continuing performance of Contract No. HR0011-06-C-0127 (the "Contract") for contractor support services for the Office of Management Operations/ Security and Intelligence Directorate ("SID") of DARPA until GAO fully reviews Maden Tech's protest of the contract award.

Maden Tech and STG, Inc., another offeror, independently filed protests with the Government Accountability Office ("GAO") to correct DARPA's wrongful conduct. Pursuant to the Competition in Contracting Act ("CICA"), 31 U.S.C. § 3553(d), DARPA was required to immediately suspend BAI's performance under the new contract. In an attempt to evade its statutory obligation, the agency issued a Determination and Finding and a Supplemental Determination and Finding (collectively, the "Combined D&F") overriding the automatic stay of BAI's performance. Exhibits A and B.

The two basic justifications for overriding the CICA automatic stay of performance offered by DARPA in its Combined D&F were the mission and responsibilities of the agency and an Order of this Court in a separate proceeding – *Beta Analytics International, Inc. v. United States*, No. 04-556C – determining that the prior award to the incumbent, Maden Tech, was arbitrary and capricious. On August 7, 2006, Maden Tech challenged the validity of DARPA's Combined D&F in the separate case pending before this Court through an Emergency Motion for Declaratory Judgment to Reinstate the Automatic Stay in Intervenor's GAO Protest, and For Leave to Amend This Court's Order Of March 15, 2006. The Motion challenged DARPA's reliance on the previous Orders of this Court as a justification to lift the automatic statutory stay.

On August 8, 2006, Judge Wolski of this Court issued an Order (the "August 8th Order") granting Maden Tech's Motion in part, agreeing that DARPA's reliance on the prior Orders of the Court as a basis for overriding the statutory stay of performance was improper. Exhibit C. In the August 8th Order, Judge Wolski also denied the Motion without prejudice, stating that Maden Tech would be required to "file a new case in our Court challenging the override, to be assigned randomly to another judge of our Court." Exhibit C at 3. After this Court's issuance of the August 8th Order, the only remaining justification in DARPA's Combined D&F to support alleged "urgent and compelling circumstances" for overriding the statutory stay is the mission of the agency.



4822821

DARPA's override of the statutory CICA stay to permit BAI to continue performance of the new contract pending the outcome of two GAO protests is not based on urgent and compelling circumstances. As set forth below:

- DARPA cannot state that an override of the stay is proper because it is "absolutely critical to the agency's mission for security support services to be in place" and that "the award to [BAI] requires the contractor to be responsible for supplying critical security services to DARPA and in turn to the national security" when the agency already had a contractor in place performing a contract for security support services.
- DARPA cannot reasonably claim that it endangers the integrity of the procurement system by continuing Maden Tech's performance under the predecessor contract during the 100-day period for GAO to decide these protests when DARPA itself previously asked this Court in a separate proceeding for a 120-day extension to extend the time period to evaluate proposals for the new contract. DARPA never informed the Court that its request to continue Maden Tech's performance would endanger the integrity of the procurement system.

Maden Tech seeks a declaratory judgment that DARPA's determination to override the automatic stay imposed under CICA, 31 U.S.C. § 3553, lacks a rational basis and is contrary to law, setting aside the invalid override decision, and reinstating the automatic stay. To protect the public interests in ensuring competition in contracting and a fair and effective process at the GAO, and to prevent immediate and irreparable harm to Maden Tech, Maden Tech request that this Court issue a Temporary Restraining Order and a Preliminary Injunction.

## BACKGROUND

### I. The Protests

On July 31, 2006, Maden Tech filed a protest with the Government Accountability Office ("GAO") against the award of the contract to BAI. Exhibit D. In its protest, Maden Tech alleges that the agency improperly awarded the new contract to BAI in violation of statutes and regulations in connection with the procurement. Maden alleges, in part, the existence of Organizational Conflicts of Interest and that DARPA failed to conduct meaningful discussions, improperly



4822821

evaluated proposals, and made an improper best value determination. This protest has been assigned to the GAO Attorney Edward Goldstein and has a decision due date of November 8, 2006.

On July 28, 2006, STG, Inc., the only other offeror remaining in the competitive range, also filed a protest with the GAO against the award of the contract to BAI. Exhibit E. The STG protest has a decision due date of November 6, 2006. Thus, there are two active protests against DARPA's award of the contract to BAI currently pending before the GAO that could lead to a determination that the contract award was improper and contrary to statute or regulation.

### III. DARPA's Determination and Findings

On August 1, 2006, DARPA issued a Determination & Finding (the "D&F") that the agency would override the statutorily required stay of performance. Exhibit A. The D&F described DARPA's mission and responsibilities and the role of DARPA's Office of Management Operations/Security and Intelligence Directorate ("SID"). The D&F also briefly described the procedural history of this procurement. DARPA states that the contract cannot be delayed pending the disposition of the protest. Beyond simply citing as justification the paragraphs describing the roles of the agency, DARPA's only articulated basis for overriding the statutory stay is that Maden Tech could not continue performance pending the GAO's decision in early November because in a separate proceeding this Court determined that the award to Maden Tech was arbitrary and capricious. As noted above, in that separate proceeding, this Court found DARPA's reliance on that previous determination to be improper.

DARPA issued a Supplemental Determination and Finding (the "Supplemental D&F")[1] on August 4, 2006, expanding on the description of DARPA's mission and responsibilities. Exhibit B. DARPA concludes that "it is absolutely critical to the agency's mission for security support services to be in place." Exhibit B at *Determination*. In determining to override the automatic stay, DARPA

[1] Collectively, the D&F and the Supplemental D&F are referred to as the "Combined D&F."

concludes that it cannot wait for GAO to issue its decision because a contractor must "be responsible for supplying critical security services to DARPA." *Id.* DARPA, however, makes no attempt to explain why Maden Tech, the contractor that had been supplying these services since March 2004, is incapable of continuing to provide these services for another three months until GAO issues its protest decision.

## ARGUMENT

This Court should grant Maden Tech requests for a temporary restraining order and injunction and issue a declaratory judgment that DARPA's determination to override the automatic stay imposed under CICA, 31 U.S.C. § 3553, lacks a rational basis and is contrary to law. As noted by this Court, the congressional intent in CICA does not require Maden Tech to demonstrate the traditional factors for injunctive relief for its challenge to the improper determination of a CICA stay override. *See generally Advanced Sys. Dev, Inc. v United States*, No. 06-484 (Fed. Cl., Jul. 21, 2006); *Cigna Gov't. Serv, LLC v United States*, 70 Fed. Cl. 100 (2006); *Chapman Law Firm v United States*, 65 Fed. Cl. 422 (2005)

### I. This Court Has Jurisdiction to Review DARPA's Override Decision

This Court has jurisdiction to review DARPA's override, particularly because it *relies upon this Court's Orders* as its primary justification for overriding a statutorily mandated stay. *See Univ Research Co, LLC v United States*, 65 Fed. Cl. 500 (2005)(rejecting Government argument that courts are without authority to review an agency's determination that the override of an automatic stay is in the best interests of the Government and granting plaintiff's request for a temporary restraining order which the court then converted into a preliminary injunction); *PGBA, LLC v United States*, 57 Fed. Cl. 655, 660 (2003)("The court simply cannot subscribe to the notion that the same Congress that, as repeatedly indicated in the legislative history of CICA, sought to bolster the GAO stay and prevent agencies from undercutting the protest review process would then arm agencies with an

override option that could easily defeat those purposes. . . ."); *Altos Federal Group, Inc. v. United States*, 60 Fed. Cl. 832, 835 (2004)(determining that the best interests override was unsupported by the evidence, without rational basis, and, therefore, could not be sustained).

The Court reviews an agency's override decision under the Administrative Procedure Act's arbitrary and capricious, abuse of discretion, or otherwise not in accordance with law standard incorporated in 28 U.S.C. § 1491(b)(4). *See, e.g., Univ. Research Co.*, 65 Fed. Cl. at 503. DARPA's decision is arbitrary and capricious if the agency "failed to consider an important aspect of the problem [or] offered an explanation for its decision that runs counter to the evidence before the agency." *See Altos*, 60 Fed. Cl. at 835. If DARPA relied upon legally irrelevant factors, or, conversely, ignored factors relevant to the override determination, the override decision necessarily lacks a reasonable basis or otherwise violates applicable law. *See PGBA*, 57 Fed. Cl. at 659.

Finally, this Court has jurisdiction to issue a declaratory judgment reinstating the CICA stay and vacating the override. 28 U.S.C. § 1491(b)(2); *Advanced Sys. Dev., Inc. v. United States*, No. 06-484 (Fed. Cl., Jul. 21, 2006) (where the party was not required to demonstrate the requirements for injunctive relief that achieves the same effect as a declaratory judgment because the CICA "statue gives presumptive weight to the otherwise required showings of irreparable harm and public interest"); *Cigna Gov't Serv. v. United States*, 70 Fed. Cl. 100, 114 (2006); *Chapman Law Firm v. United States*, 65 Fed. Cl. 422, 424 (2005)("Declaratory relief has long been established as available in bid protest matters."). As the Court noted in *Chapman*, declaratory relief is particularly appropriate in bid protest actions contesting agency stay override determinations. Maden Tech contests the validity of DARPA's override determination, and requests the Court to issue a declaratory judgment finding the override decision invalid as described herein.

## II. DARPA's Override of the Automatic Stay was Arbitrary and Capricious and in Violation of the Competition in Contracting Act

The CICA stay protects the integrity of the procurement system. The overarching goal of the stay is to preserve competition in contracting and ensure a fair and effective process at the GAO. *Advanced Sys. Dev, Inc. v United States*, No. 06-484 (Fed. Cl., Jul. 21, 2006). CICA's automatic stay provisions require agencies to "direct the contractor to cease performance under the contract and to suspend any related activities that may result in additional obligations being incurred by the United States under the contract." *PGBA*, 57 Fed. Cl. at 657, citing 31 U.S.C. § 3553(d)(3). Furthermore, contract performance may not be resumed while the protest is pending. *Id.*

The automatic stay also is intended "to preserve the status quo during the pendency of the protest so that an agency would not cavalierly disregard the GAO's recommendation to cancel the challenged award." *Advanced Sys. Dev, Inc. v United States*, No. 06-484 (Fed. Cl., Jul. 21, 2006), citing *PGBA*, 57 Fed. Cl. 655. Although the agency is permitted to override a stay in the best interest of the United States or under urgent and compelling circumstances that significantly affect interests of the United States, the interests of the United States also include "weighing the benefits Congress obviously felt were furthered by bolstering the bid protest process, and, in turn, promoting competition in contracting." *PGBA*, 57 Fed. Cl. at 663.

Simply put, the "critical security support services" DARPA requires for national security and to support its mission were already in place prior to the stay override. Had DARPA not improperly overridden the stay, the agency was fully capable of maintaining the status quo with a contractor in place capable of continuing performance on the exact work that the underlying solicitation contemplated. DARPA's determination that "the award to [BAI] requires the contractor to be responsible for supplying critical security services to DARPA and in turn to the national security" justified overriding the automatic stay is completely arbitrary and capricious when the agency already had a contractor in place performing a contract for the exact same security support services.

Moreover, DARPA cannot claim that allowing Maden Tech to continue performance for an additional three months "would not be in the best interest of the Government and would endanger the integrity of the procurement system" because DARPA previously asked this Court in a separate proceeding to permit Maden Tech's continued performance of the contract for over three months. In seeking to extend the time by which it had to award a new contract, DARPA did not disclose to the Court that it believed Maden Tech's continued performance was not in its best interest or would endanger the integrity of the procurement system. Given that Maden Tech has been performing this contract since April 2004, extending performance another three months to preserve competition in contracting and ensure a fair and effective process at the GAO will not endanger the integrity of the procurement system.

The Court should grant Maden Tech the relief it requests to preclude any further effort by DARPA to depart from statutory and regulatory procurement procedures. DARPA should not be able to override the automatic stay merely to meet the re-procurement schedule, particularly where DARPA previously has asked for, and received, schedule extensions. A short continuance of this Court's re-procurement schedule will protect the integrity of the procurement system by ensuring a fair and effective process at the GAO. *Advanced Sys. Dev, Inc. v United States*, No. 06-484 (Fed. Cl., Jul. 21, 2006).

## CONCLUSION

For the foregoing reasons, Maden Tech requests that the Honorable Court grant its motion and issue a declaratory judgment that DARPA's determination to override the automatic stay imposed under CICA, 31 U.S.C. § 3553, lacks a rational basis and is contrary to law. Maden Tech requests that the Court set aside the invalid override decision and reinstate the automatic stay. Maden Tech also requests that the Court issue a Temporary Restraining Order and Preliminary Injunction prohibiting DARPA from allowing work to proceed under Contract No. HR0011-06-C-

0127 until a full resolution of the protests pending against that contract award before the Government Accountability Office.

Dated: August 11, 2006

Respectfully submitted,

T. Michael Guiffré /by emg

T. Michael Guiffré
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6441
(202) 457-6315 (Fax)

Attorney of Record for
Maden Tech Consulting, Inc.

Of Counsel:
Robert S. Brams
Elizabeth M. Gill
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000
(202) 457-6315 (Fax)

# APPENDIX

# A

**DEFENSE ADVANCED RESEACH PROJECTS AGENCY**
3701 NORTH FAIRFAX DRIVE
ARLINGTON, VA 22203-1714

T. Michael Guiffre
Patton Boggs, LLP
Attorneys at Law
2550 M Street, NW
Washington, DC 20037-1350

AUG 1 2006

FAX: 202-457-6315

RE: GAO Protests of STG Incorporated (STG) and Maden Technologies Incorporated (Maden), under Solicitation HR0011-06-R-0001, GAO File No. **B-29854.1** and **B-298543.2**

Dear Mr. Guiffre:

Enclosed please find the Determination and Finding regarding DARPA's override of the stay requirement pursuant to 31 U.S.C. Sec. 3553(d)(3)(c)(II) and Federal Acquisition Regulation (FAR) 33.104(c)(2)(ii).

If you have any questions regarding this matter please contact me at (571) 218-4409.

Sincerely,

Mary E. Clarke
Assistant General Counsel
DARPA

## DETERMINATION AND FINDING

**SUBJECT:** Override of Stay Requirement, GAO Protests of STG, Incorporated (STG) and Maden Technologies Incorporated (Maden), Against Contract HR0011-06-C-0127, GAO File No. B-29854.1 and B-298543.2

This Determination and Findings is made pursuant to 31 U.S.C. Sec. 3553(d)(3)(c)(II) and Federal Acquisition Regulation (FAR) 33.104(c)(2)(ii).

**FINDINGS**

1. The relevant facts are as follows:

a. The Defense Advanced Research Projects Agency (DARPA) is the requiring activity. DARPA needs support services in developing, implementing and maintaining programs that facilitate the secure and successful accomplishments of its mission while protecting DARPA.

b. The mission of DARPA is to serve as the central research and development organization of the Department of Defense with a primary responsibility to maintain U.S. technological superiority over potential adversaries. DARPA is responsible for many secret and top secret programs.

c. DARPA is responsible for:

Arranging for the performance of, and supervising the work connected with, DARPA projects assigned to the Military Departments, other U.S. Government activities, individuals, private business entities, educational institutions, or research institutions, giving consideration to the primary functions of the Military Departments.

Engaging in assigned advanced research projects.
32 CFR Part § 358.4 (d) (e)

d. DARPA's Office of Management Operations(OMO)/Security and Intelligence Directorate (SID) supports this mission by planning, executing, and directing the information, personnel, industrial, information assurance, and physical security programs at DARPA headquarters and at specified contractor sites. This includes Sensitive Compartmented Information (SCI), Special Access Programs (SAP), and classification management activities. OMO/SID also formulates and implements security policy and procedures at DARPA and represents DARPA on security matters with external organizations. In fulfilling this responsibility, OMO/SID desires support services in developing, implementing and maintaining programs that facilitate the secure and successful accomplishments of its mission

while protecting DARPA personnel, information and property, and that are consistent with DARPA Mission, Public Law, National Policy, applicable Executive Orders, and Department of Defense Directives and Regulations. These support services are the requirements of subject solicitation and contract.

e. On the previous award for these services Beta Analytics International, Inc., (BETA) protested the award that was made to Maden Technologies Consulting, Inc. On November 23, 2005, the Court enjoined DARPA from exercising further options with the incumbent. The performance under the current option expired on March 31, 2006. By way of an additional Order, the Court gave DARPA until July 31,2006 to make a new award under full and open competition.

f. Pursuant to the Court Order on February 13, 2006 DARPA issued solicitation HR011-06-R-0001 on a full and open competition basis.

g. There were 5 offers received in response to the solicitation.

h. Negotiations were held with three of the offerors, STG, Maden, and BETA.

i. An award, HR0011-06-C-0127, was made to BETA on July 19, 2006 for $12,013,757.00

j. On July 28, 2006 STG filed a protest with GAO. STG received a debriefing on the award on July 26, 2006.

k. On July 31, 2006, Maden filed a protest with the GAO. Maden received a debriefing on the award on July 28, 2006.

l. Both protests were filed within 5 days after unsuccessful offeror received a debriefing from the contracting officer.

m. Pursuant to 31 U.S.C. Sec. 3553(d)(3)(A)(ii), the contracting officer is required to direct the contractor to cease performance upon receipt of a notice of protest within 5 days after a debriefing.

n. A decision on the protest is not due from the GAO until November 8, 2006. This contract cannot be delayed pending the disposition of the protest. (See paragraphs "a" through paragraph "d" above).

o. In addition, DARPA cannot have the previous contractor, Maden, to continue performance because the Federal Court of Claims determined that the award to Maden was arbitrary and capricious. To ask Maden to continue performance would not be in the best interest of the Government and would endanger the integrity of the procurement system by continuing an award the court has determined unlawful. In addition, if DARPA wanted to continue the performance by Maden, permission from the Federal Court of Claims would be required.

DARPA could not fulfill its mission while waiting for the Court to rule on such a motion.

p. 31 U.S.C. Sec. 3553(c), as implemented by FAR 33.104(c), provides that the head of the contracting activity may authorize contract performance notwithstanding the protest, upon a written finding that urgent and compelling circumstances that significantly affect the interests of the United States will not permit waiting for the GAO's decision.

**DETERMINATION**

The award to Beta Analytics International, Inc. requires the contractor to be responsible for supplying critical security services to DARPA and in turn to the national security. I determine that urgent and compelling circumstances significantly affecting the interests of the United States will not permit waiting for the decision of the Comptroller General.

WILLIAM LEHR
Acting Director
DARPA

# B

**DEFENSE ADVANCED RESEACH PROJECTS AGENCY**
3701 NORTH FAIRFAX DRIVE
ARLINGTON, VA 22203-1714

AUG 4 2006

T. Michael Guiffre
Patton Boggs, LLP
2550 M Street, NW
Washington, DC 20037-1350

Dear Mr. Guiffre:

This letter is in regards to the GAO Protests of STG Incorporated (STG) and Maden Technologies Incorporated (Maden), under Solicitation HR0011-06-R-0001, GAO File Number **B-29854.1** and **B-298543.2**. Enclosed please find a Supplemental Determination and Finding regarding Defense Advanced Research Projects Agency's (DARPA) override of the stay requirement pursuant to 31 U.S.C. Sec. 3553(d)(3)(c)(II) and Federal Acquisition Regulation (FAR) 33.104(c)(2)(ii).

If you have any questions regarding this matter, please contact me at (571) 218-4409.

Sincerely,

Mary E. Clarke
Assistant General Counsel

Enclosure:
As stated

## SUPPLEMENTAL DETERMINATION AND FINDING

**SUBJECT:** Override of Stay Requirement, GAO Protests of STG, Incorporated (STG) and Maden Technologies Incorporated (Maden), Against Contract HR0011-06-C-0127, GAO File No. B-29854.1 and B-298543.2

This Determination and Findings is made pursuant to 31 U.S.C. Sec. 3553(d)(3)(c)(II) and Federal Acquisition Regulation (FAR) 33.104(c)(2)(ii).

Additional Facts:[1]

a. The mission of DARPA is to serve as the central research and development organization of the Department of Defense (DoD) with a primary responsibility to maintain U.S. technological superiority and prevent, through radical innovation for national security, technology surprise that could weaken the United States.

b. DARPA is responsible for:

Engaging in assigned advanced research projects and supplying technological options for the entire Department of Defense (DoD). The Agency is designed to be the "technological engine" for transforming the DoD. DARPA looks beyond today's known needs and requirements. As military historians note:[2] "None of the most important weapons transforming warfare in the 20th century – the airplane, tank, radar, jet engine, helicopter, electronic computer, not even the atomic bomb – owed its initial development to a doctrinal requirement or request of the military. *None* of them". To this list, DARPA would add some compelling national security capability that includes unmanned systems, stealth, global positioning system (GPS) and Internet technologies. The future strength and preparedness of the United States and DoD depends upon the success of this technology engine and the continued generation, acceleration, and protection of radical innovation.

c. DARPA's Office of Management Operations (OMO)/Security and Intelligence Directorate (SID) supports this vital mission by planning, executing, and directing the information, personnel, industrial, information assurance, and physical security programs at DARPA headquarters and at specified contractor sites. These critical security services form the foundation and provide the protective blanket that wraps and preserves each new idea generated by the "technology engine" in accordance with Executive Order and DoD Security Policy. This includes the full range of classified information from Secret Collateral to Top Secret and Unacknowledged

---

[1] The Director of Special Access Program was unavailable until today to give input on the need to continue services under the contract.

[2] John Chambers, ed., *The Oxford Companion to American History* (New York: Oxford University Press, 1999) p. 791

Special Access Programs fed by intelligence at the Sensitive Compartmented Information (SCI) level.

d. For the direction, administration, and oversight of the DoD Information Security Program to ensure that its program is efficient, recognizes assigned authorities and responsibilities, and that appropriate management safeguards are in place to prevent fraud, waste, and abuse. This includes active oversight, classification, declassification, and security education and training programs to ensure effective implementation of DoD 5200.1-R.

**DETERMINATION**

In fulfilling these nationally important responsibilities, it is absolutely critical to the agency's mission for security support services to be in place. The award to Beta Analytics International, Inc. requires the contractor to be responsible for supplying critical security services to DARPA and in turn to the national security. I determine that urgent and compelling circumstances significantly affecting the interests of the United States will not permit waiting for the decision of the Comptroller General.
Thus, there is an urgent and compelling reason why I have determined that the override of the automatic stop work order is required.

Robert Leheny

ANTHONY J. TETHER for AJT 4 Aug 06
Director
DARPA

# C

# In the United States Court of Federal Claims

NOT FOR PUBLICATION
No. 04-556C
(Filed August 8, 2006)

FILED
AUG 8 2006
U.S. COURT OF FEDERAL CLAIMS

* * * * * * * * * * * * * * * * * * * * * * * * *

**BETA ANALYTICS INTERNATIONAL, INC.,**

Plaintiff,

v.

**THE UNITED STATES,**

Defendant,

and

**MADEN TECH CONSULTING, INC.,**

Intervenor.

* * * * * * * * * * * * * * * * * * * * * * * * *

**ORDER**

The Court has received a copy, by facsimile, of "Intervenor's Emergency Motion for Declaratory Judgment to Reinstate the Automatic Stay in Intervenor's GAO Protest, and for Leave to Amend this Court's Order o[f] March 15, 2006." In previous orders, this Court determined that the award of a contract to Maden Tech was arbitrary, *see Beta Analytics Int'l v. United States*, 67 Fed. Cl. 384 (2005), and that the appropriate remedy was a re-procurement and an injunction preventing the government from exercising any more options on intervenor's contract. *Beta Analytics Int'l v. United States*, 69 Fed. Cl. 431, 434-35 (2005) ("*Beta II*"). Since the current option year was to end on April 9, 2006, the Court ordered that the re-procurement be conducted "upon a time schedule that will allow the new contract to be awarded with a start date of April 10, 2006." *Id.*

When this schedule proved infeasible, the Court granted defendant's unopposed motion to extend the re-procurement period for an additional 120 days, so that defendant was required to "conduct the ordered re-procurement upon a time schedule that will allow the new contract to be awarded with a start date of no later than July 30, 2006." Order, March 15, 2006. According to Maden Tech a new contract was awarded to plaintiff, as a result of the re-procurement, with a

start date of July 27, 2006. Mem. in Supp. Emerg. Mot. at 3. Thus, the government has satisfied the Court's March 15, 2006 order.

Maden Tech and another unsuccessful bidder, STG, Inc., apparently filed timely protests of this new award with the Government Accountability Office. *Id.* at 3-4. The Defense Advanced Research Projects Agency ("DARPA") issued a Determination and Finding that "urgent and compelling circumstances significantly affecting the interests of the United States will not permit waiting for the decision of the Comptroller General," and thus the automatic stay was overridden pursuant to 31 U.S.C. § 3553(d)(3)(c)(II). Ex. A to Emerg. Mot (Determ. & Finding at 3). Because the determination was based, in part, on DARPA's construction of the Court's previous orders to require this Court's permission "to continue the performance by Maden," *id.* (Determ. & Finding at 2, ¶ o), intervenor seeks this Court's review of the override decision or, in the alternative, an amendment or clarification concerning the government's obligations under the prior orders.

Although the re-procurement is part of the Court-ordered remedy redressing the arbitrary award of the contract to Maden Tech, this did not convert the Court into a superintendent of the process. This role was rejected, as improper, by the Court in *Beta II*, 69 Fed. Cl. at 432, even with regard to the rights of the injured party in this case -- as the Court explained that plaintiff "can enforce its rights in a *separate*, pre-award challenge." *Id.* at 434. The re-procurement process was a new matter, from which new controversies may pose the subject matter of a new case. But neither did the Court intend its orders concerning the re-procurement to interfere with or complicate any protests concerning the re-procurement. In enjoining the government from "exercising another option *year*," *id.* (emphasis added), the Court did not intend to prevent the government, if it felt it were necessary, from making any short-term extensions of the Maden Tech contract to facilitate the bid protest process. To that extent, intervenor's motion is **GRANTED**, and the prior orders are clarified.

But while the Court's prior orders should not be viewed as forbidding a short-term extension, they also should not be read to encourage one. The Court takes no position on whether the circumstances are "urgent and compelling," warranting an override of the automatic stay. After all, the automatic stay would allow Maden Tech's contract, arbitrarily awarded in the first place, to be extended during the pendency of the GAO proceedings, so that plaintiff may be prevented from performing the new contract. In other words, just because the second award *might* have been arbitrary, Maden Tech seeks to benefit further from a previous award that *was* arbitrary. Considering that Beta Analytics was the incumbent under the contract that ended with the arbitrary award to Maden Tech, from plaintiff's perspective this result would assuredly add insult to injury, if not additional injury. And as the proceedings of this case have demonstrated, the beginning of performance under a contract does not preclude the possibility that a well-founded protest may succeed. While DARPA may have had no choice but to allow Maden Tech to continue its performance while the re-procurement was proceeding, the completion of the re-procurement has identified another contractor that can displace one whose status was arbitrarily created.

But this case is not the proper vehicle for the override decision to be reviewed. The re-procurement might have been the result of the above-captioned case, but was not its subject, and the Court finds that it is without jurisdiction to rule on the DARPA override. Either Maden Tech or STG may, of course, file a new case in our Court challenging the override, to be assigned randomly to another judge of our Court. This Court's order should not be read as affecting their abilities to do so. The motion to declare the override invalid and to set it aside is, accordingly, **DENIED** without prejudice.

**IT IS SO ORDERED.**

VICTOR J. WOLSKI
Judge

# D

PATTON BOGGS LLP
ATTORNEYS AT LAW

2550 M Street, NW
Washington, DC 20037-1350
202-457-6000

Facsimile 202-457-6315
www.pattonboggs.com

July 31, 2006

T. Michael Guiffré
(202) 457-6441
mguiffre@pattonboggs.com

VIA FACSIMILE AND ELECTRONIC MAIL

General Counsel
Government Accountability Office
441 G Street, NW
Washington, DC 20548

ATTN: Procurement Law Control Group

Re: **Protest of Maden Tech Consulting Inc.**
**Solicitation No. HR0011-06-R-0001**
**Defense Advanced Research Projects Agency**

Dear Sir or Madam:

Maden Tech Consulting, Inc. d/b/a Maden Technologies ("Maden Technologies"), by its undersigned counsel, hereby protests the decision of the Defense Advanced Research Projects Agency ("DARPA") to award the contract resulting from Solicitation No. HR0011-06-R-0001 to Beta Analytics International, Inc. ("BAI"). This protest is timely filed within 10 days of the date Maden Technologies knew or should have known of the basis for the protest, within 10 days of contract award on July 19, 2006, and also within 5 days of the July 28, 2006 required post-award debriefing. Accordingly, the agency is required to suspend performance of the contract pending resolution of the protest. FAR 33.104(c).

This protest contains proprietary and/or confidential business information of Maden Technologies. As such, it should be treated as a document subject to a GAO Protective Order. A redacted copy of this protest will be filed with the GAO and with the agency within one day after the filing of this protest.

## INTRODUCTION

This is a protest of DARPA's award of a contract for Contractor Support Services for the Office of Management Operations/Security and Intelligence Directorate ("SID") of DARPA. The Solicitation stated that a contract would be awarded to the responsible offeror whose proposal was determined to be the most advantageous to the Government, cost and other factors considered. That determination was to be made on a best value basis utilizing the trade off process where the technical factors combined were significantly more important than price. DARPA awarded the contract to BAI in the amount of [redacted] Maden Technologies'

PATTON BOGGS LLP
ATTORNEYS AT LAW



proposed price for its superior technical proposal was $[redacted], [redacted] than BAI's price.[1]

Maden Technologies protests DARPA's failure to mitigate Organizational Conflicts of Interest, improper evaluation of Maden Technologies' technical proposal, failure to conduct meaningful discussions, and improper best value determination. Had DARPA adhered to the Solicitation and properly evaluated the technical proposals, it would have been required to award the contract to Maden Technologies. Accordingly, Maden Technologies requests the GAO's recommendation that the contract be awarded to Maden Technologies.

## BACKGROUND

### The Solicitation

On February 13, 2006, DARPA issued Solicitation No. HR0011-06-R-0001 (the "Solicitation" or "RFP") seeking offers to provide services required to support the Security and Intelligence Directorate, which is under the Office of Management Operations. The awardee was to provide and manage personnel and equipment, to include support provided to the contractor by subcontractors and consultants, to safeguard DARPA, U.S. Government and other resident property, personnel, and information, and to assure the continuity of the DARPA work effort. The contract awarded was to be a Cost-Plus-Award-Fee ("CPAF") contract.

DARPA amended the original Solicitation four times. Amendment 0001 was issued on March 1, 2006 to revise RFP language concerning the Award Fee and to correct typographical errors. Amendment 0002 was issued on March 8, 2006 to revise Section L requirements for letters of intent and teaming agreement submissions. Amendment 0003 was issued on April 17, 2006 to require revision of cost proposals based on a revised award/start date of June 1, 2006. Amendment 0004 was issued on May 31, 2006. Amendment 0004 revised the Statement of Work and evaluation criteria concerning qualifications of offered employees. This Amendment also permitted offerors in the competitive range to update proposed resumes, provide changes to the cost proposals, or make other changes. The Amendment also changed the expected award date to June 15, 2006 with an expected start date of July 1, 2006.

---

1 Based on the protest issues raised herein, the variance in the agency's evaluated prices was erroneous.

REDACTED VERSION

PATTON BOGGS LLP
ATTORNEYS AT LAW



## The Evaluation Criteria

The RFP states a contract would be awarded to the responsible Offeror whose proposal, conforming to the solicitation, is determined to be most advantageous to the Government, cost and other factors considered. The determination on which proposal is most advantageous to the Government will be made on a best value basis utilizing the trade off process where the technical factors combined are significantly more important than Cost/Price.

The technical proposals were measured by the non-cost factors of Technical Approach, Personnel, and Past Performance. Technical Approach and Personnel were of equal importance and were both of greater importance than Past Performance. The technical factors combined were significantly more important than the Cost/Price factor. Although the non-cost factors were significantly more important than cost/price, the importance of cost/price as a factor in the final determination increased as non-price factors of the proposal become closer in merit.

The Technical Approach factor contained four sub-factors: Understanding of the Statement of Work, Management and Execution of Contract Requirements, Staffing Plan/Teaming Arrangements, and Corporate Support/Facilities. The first three factors were of equal importance and were each of higher importance than the final sub-factor. The Personnel technical factor did not contain any sub-factors. The Past Performance factor contained four sub-factors of equal importance: Timeliness (A), Quality (B), Cost Control (C), and Customer Satisfaction (D).

The Solicitation, as amended by Amendment 001, provided that the agency would use cost analysis to evaluate that the proposed cost/price was reasonable and realistic and adhered to the requirements of Section L.10 of the RFP. The RFP anticipated that a cost realism evaluation would be performed to determine the most probable cost to the government for the work to be performed and to assess the Offeror's understanding of the requirements of the RFP. The evaluated cost was to be the higher of either (a) the sum of the Offeror's proposed total estimated cost and fee or (b) the Government's determination of the most probable total cost and fee.

## The Debriefing

DARPA notified Maden Technologies of contract award on Wednesday, July 19, 2006. Maden Technologies immediately requested a debriefing in accordance with FAR 15.506. In response to Maden Technologies' request, DARPA held an oral debriefing on Friday, July 28, 2006.

REDACTED VERSION

At the debrief, DARPA informed Maden Technologies that the proposals were evaluated using colors and adjectival ratings. A "Blue" rating was considered "Exceptional," a "Green" rating was considered "Acceptable," a "Yellow" rating was considered "Marginal," and a "Red" rating was "Unacceptable." The agency used six degrees of strengths and weaknesses from "significantly above" to "significantly below." Finally, the agency assigned risk values to aspects of the proposals of high, moderate, and low.

For Factor 1, Technical Approach, [redacted] ratings for all of the sub-factors and an overall rating of "[redacted]." For Factor 2, Personnel, again [redacted]. On the Past Performance evaluation Factor, [redacted]

The risk-adjusted estimate of Maden Technologies' proposal was $[redacted] and BAI's evaluated cost was $[redacted]. DARPA declined to provide a copy of the debriefing slides to Maden Technologies. Maden Technologies' predecessor contract is scheduled to end today, July 31, 2006.

## GROUNDS OF PROTEST

### I. THE AGENCY FAILED TO ADDRESS AN IMPROPER ORGANIZATIONAL CONFLICT OF INTEREST

BAI should have been eliminated from the competition because of multiple improper organizational conflicts of interest. An organizational conflict of interest ("OCI") is defined in FAR 2.101 as follows: "that because of other activities or relationships with other persons, a person is unable or potentially unable to render impartial assistance or advice to the Government, or the person's objectivity in performing the contract work is or might be otherwise impaired, or a person has an unfair competitive advantage."

Section H-12, Organizational Conflict of Interest, of the Solicitation required contractors to disclose the existence or potential existence of any organizational conflicts of interest prior to award or as promptly as possible if discovered after award. If a contractor fails to disclose or misrepresents any organizational conflicts of interest, the RFP permits the government to terminate the contract, disqualify the contractor from subsequent contractual efforts, and pursue other such remedies as may be permitted by law or the contract. Because of BAI's own actions and the actions of its team members and agency officials, BAI gained an unfair competitive advantage in this procurement and its contract should be terminated.

REDACTED VERSION

Specifically, [redacted] is a former employee of BAI and served as BAI's Deputy Program Manager when BAI held the predecessor contract on this procurement. [redacted] was and is the day-to-day supervisor of two members of the technical evaluation team, [redacted] was specifically responsible for the past performance evaluation, and [redacted] was a member of the proposal evaluation team. By virtue of [redacted] role in this procurement, BAI had an unfair competitive advantage over other offerors.

Additionally, upon information and belief [redacted] and/or other DARPA employees granted BAI employees special access to the project site prior to the award of the contract. At the same time, [redacted] denied the Program Director for Maden Technologies similar access to the project site even though Maden Technologies was still performing the predecessor contract. Allowing BAI employees special access to the project site created an unfair advantage that should have been disclosed or excluded BAI from participating in the procurement.

BAI also did not disclose another conflict of interest. Section L.6 of the Solicitation required BAI to disclose if they were providing any type of contractor support to any DARPA technical or support offices through an active contract or subcontract. Section L.6.(I) and the response to the Frequently Asked Questions dated March 15, 2006, also bound support contractors of offerors to the organizational conflict of interest clauses in the RFP. Upon information and belief, BAI teamed with a support contractor, [redacted] was a source selection official on a prior DARPA procurement under which Maden Technologies submitted an offer as a team member. In that capacity, [redacted] had access to proprietary information belonging to Maden Technologies. [redacted] participation as a BAI team member created an unfair competitive advantage for BAI. For this reason, BAI should have been excluded from participating in the competition.

DARPA's failure to exclude BAI from the procurement or to properly waive or require mitigation of the existing organizational conflicts of interest prejudiced Maden Technologies. Pursuant to the terms of the Solicitation, BAI's contract should be terminated based on this improper conflict of interest, and the contract should be awarded to Maden Technologies.

## II. DARPA FAILED TO FOLLOW THE STATED EVALUATION CRITERIA

FAR 15.305 mandates that "[a]n agency shall evaluate competitive proposals and then assess their relative qualities solely on the factors and sub-factors specified in the solicitation." An agency's failure to reasonably evaluate competitive proposals consistent with the stated evaluation criteria justifies the setting aside of the award decision. *Future-Tec Management Systems, Inc.*; *Computer and Hi-Tech Management, Inc.*, B-283793.5, B-283793.6, March 20, 2000, 2000 CPD ¶

REDACTED VERSION

PATTON BOGGS LLP
ATTORNEYS AT LAW

July 31, 2006
Page 6

59. As set forth below, DARPA failed to adhere to the RFP evaluation criteria when it unreasonably evaluated BAI's and Maden Technologies' proposals.

### A. DARPA Misevaluated Maden Technologies' Technical Proposal

Maden Technologies received a [redacted] of the Past Performance evaluation factor. At the debrief it was explained [redacted] This was explained at the debrief [redacted] sub-factor. The evaluation committee [redacted] Technologies when it had sufficient information to give Maden Technologies a "[redacted]" rating. The DARPA Program Manager had previously submitted a Contractor Performance Assessment Report ("CPAR") rating Maden Technologies' performance on the incumbent contract through March 27, 2006 as "[redacted]."[2] Maden Technologies was prejudiced by the [redacted] for the Past Performance factor based [redacted] Had the agency properly rated Maden Technologies based on its excellent CPAR review, Maden Technologies would have received "[redacted]" ratings for all of the sub-factors and an overall stronger rating than BAI on the Past Performance evaluation factor. Maden Technologies would have been selected for award.

Furthermore, DARPA improperly and unreasonably evaluated Maden Technologies' proposal under the Technical evaluation factor. Under sub-factor C, Staffing Plan/Teaming Arrangements, Maden Technologies received a "[redacted]. Maden Technologies received this rating notwithstanding the fact that it proposed [redacted] BAI's subcontractors, on the other hand, consist of a company with less than one hundred employees and a company with a *single* employee. Maden Technologies' proposal offered a team that could respond quickly to temporary surge requirements, staff turnover, and a shift in work areas or tasks, all as required by the evaluation criteria for the Staffing Plan/Teaming Arrangement sub-factor. The [redacted] by the agency are irrational and contrary to the stated

---

[2] The CPAR gave Maden Technologies [redacted]

REDACTED VERSION

PATTON BOGGS LLP
ATTORNEYS AT LAW



evaluation criteria. Had the agency properly evaluated Maden Technologies, it would have received a "[redacted]" rating for this sub-factor.

Moreover, the agency gave Maden Technologies [redacted] of the Technical evaluation factor. Maden Technologies offered [redacted] The strengths that Maden Technologies offered under this sub-factor should have garnered a [redacted] rating if it had been properly evaluated by DARPA. But for the agency's unreasonable and improper evaluation of Maden Technologies' proposal [redacted], Maden Technologies would have received a [redacted] overall rating for the Technical Factor than BAI and should have been awarded the contract.

**B. BAI's Proposal Should Have Been Rated Unacceptable**

The evaluation criteria required the offerors to meet the requirements set forth in Section C of the RFP, Statement of Work. Section C.9.1, Personnel Qualifications – General, as amended by Amendment 0004 to the RFP, states in part:

> On award, all of the contractor's staff, as proposed under this RFP, shall be available for performance by the end of the transition period, as described in paragraph F-1, page 39 of this RFP. If for some circumstances beyond the control of the offeror, a proposed employee is not available **at the time of award, the offeror CANNOT replace the proposed employee with someone less qualified than the employee proposed** in response to the solicitation. **Failure to comply is justification for termination of the award and the making of an award to another offeror.**

(Emphasis added). Furthermore, section H-4(b) concerning Key Personnel states:

> The Contractor must demonstrate that the qualifications of the prospective personnel are equal to or better than the qualifications of the personnel being replaced. Notwithstanding any of the foregoing provisions, **key personnel shall be furnished unless the Contractor has demonstrated to the satisfaction of the COR that the qualifications of the proposed substitute personnel are equal to or better than the qualifications of the personnel being replaced.**

(Emphasis added).

At the debrief, the agency informed Maden Technologies [redacted] DARPA [redacted].

REDACTED VERSION

PATTON BOGGS LLP
ATTORNEYS AT LAW



Since contract award, BAI has replaced [redacted] RFP requirements. One of the positions where BAI [redacted] according to Section H-4 of the RFP.

The RFP and Amendment 0001 specifically prohibit BAI from replacing previously qualified proposed employees with someone less qualified, [redacted]. Prior to replacing their proposed employees with Maden Technologies' employees, [redacted]. When work is scheduled to commence, BAI will have replaced at least [redacted], contrary to the terms of the RFP. Moreover, the RFP specifically prohibited BAI from replacing the Program Manager position with someone less qualified. BAI materially misrepresented that it would provide qualified personnel, and DARPA evaluated BAI's proposal based on that misrepresentation. DARPA should have rated BAI as unacceptable in the Personnel Evaluation factor. Replacing qualified personnel with unqualified personnel is contrary to the explicit terms of the RFP and requires DARPA to terminate the award to BAI and award the contract to Maden Technologies.

## III. DARPA FAILED TO CONDUCT MEANINGFUL DISCUSSIONS

The Solicitation stated DARPA's intent to award the contract without conducting discussions. Through Amendment 0004, however, the agency began negotiations with the offerors that by definition are discussions. *See* FAR 15.306(d). Although the scope and extent of discussions are generally considered issues within the contracting officer's discretion, DARPA's failure to conduct *meaningful* discussions here was improper.

FAR 15.306(d)(3) requires the contracting officer, at a minimum, to discuss deficiencies, significant weaknesses, and adverse past performance information to which the offeror has not yet had an opportunity to respond. Amendment 0004 [redacted]. As such, Maden Technologies was never given an opportunity to respond to [redacted] through the end of March 2006.

Maden Technologies was informed at the debrief that Mr. Copeland's office gave Maden Technologies [redacted] through the end of March 2006 described above. On

REDACTED VERSION

PATTON BOGGS LLP
ATTORNEYS AT LAW



this basis, [redacted] Past Performance sub-factors. DARPA's failure to advise and discuss [redacted] once it commenced discussions is contrary to regulation. *See Dismas Charities, Inc*, B-292091, 2003 CPD ¶ 125 (Jun. 25, 2003). Maden Technologies was prejudiced [redacted] and on this basis its protest must be sustained.

## IV. DARPA CONDUCTED AN IMPROPER BEST VALUE DETERMINATION

The RFP required DARPA to evaluate the offerors based on four factors: technical approach, personnel, past performance, and cost/price. The technical factors combined were significantly more important than the cost/price factor, but as the technical factors became closer in merit, the cost/price factor became more important.

DARPA's best value determination was flawed because Maden Technologies' and BAI's proposals were improperly rated under the stated evaluation criteria. But for DARPA's failure to properly follow the evaluation scheme, Maden Technologies would have received an overall rating [redacted]. With [redacted] Maden Technologies was the best value and the most advantageous offer. Maden Technologies was prejudiced by DARPA's flawed and unreasonable determination that BAI represented the best overall value to the government. DARPA should have awarded the contract to Maden Technologies under a proper best value determination.

## REQUIRED INFORMATION

Maden Technologies' address is 2110 Washington Boulevard, Suite 200, Arlington, Virginia 22204, telephone (703) 769-4440, and facsimile (703) 769-4424. The point of contact for Maden Technologies is Earl Thompson, Director of Contracts. He can be reached by electronic mail at ethompson@madentech.com. Patton Boggs' address is 2550 M Street, NW, Washington, D.C. 20037, telephone (202) 457-6000, and facsimile (202) 457-6315. The point of contact for this protest will be Michael Guiffre. He can be reached by telephone at (202) 457-6441 and by electronic mail at mguiffre@pattonboggs.com.

Maden Technologies is an actual offeror with a direct economic interest in the protest. Maden Technologies submitted the best value offer, and but for DARPA's improper actions, would have received the contract award. Its economic interest has been directly affected by the intended award of the contract to a competitor in violation of the terms of the Solicitation and applicable procurement laws and regulations.

The contracting agency is the Defense Advanced Research Projects Agency, 3701 Fairfax Drive, Arlington, Virginia 22203-1714. The Contracting Officer is Wade Wargo at the same

REDACTED VERSION

PATTON BOGGS LLP
ATTORNEYS AT LAW



address. His phone number is (571) 218-4815. His facsimile number is (703) 807-4905. The Solicitation provides that copies of any protest should be sent to Wade Wargo, DARPA/CMO, 3710 North Fairfax Drive, Room 461, Arlington, Virginia 22203-1714.

## DISCOVERY REQUESTS

1. All documents evidencing or reflecting the technical evaluation of Maden Technologies and other offerors, including but not limited to the evaluation plan, scoring sheets and narratives prepared by or reviewed by the evaluation team, and all communications between the Contracting Officer and the evaluation team. These documents are relevant to the allegations that DARPA improperly evaluated proposals, failed to address organizational conflict of interest issues, failed to conduct meaningful discussions, and conducted an improper best value determination.

2. All documents evidencing or reflecting the basis for award of the contract to BAI. These documents are relevant to the allegations that DARPA improperly evaluated proposals, failed to address organizational conflict of interest issues, failed to conduct meaningful discussions, and conducted an improper best value determination.

3. All documents evidencing or reflecting communications (including e-mail) between (i) [redacted] and/or the SID Office, and (ii) the evaluation team, any evaluation team members, the Contracting Officer, any offeror(s),[3] and/or individual(s) involved in this procurement (including any individual providing information to the evaluation team). These documents are relevant to the allegations that DARPA improperly evaluated proposals, failed to address organizational conflict of interest issues, failed to conduct meaningful discussions, and conducted an improper best value determination.

4. [redacted] calendars and/or appointment schedules since November 1, 2005. These documents are relevant to the allegations that DARPA improperly evaluated proposals, failed to address organizational conflict of interest issues, failed to conduct meaningful discussions, and conducted an improper best value determination.

5. All documents on which DARPA relied in evaluating Maden Technologies' and BAI's proposals. These documents are relevant to the allegations that DARPA improperly evaluated proposals, failed to address organizational conflict of interest issues, failed to conduct meaningful discussions, and conducted an improper best value determination.

---

[3] This request includes any communications with BAI, BAI's parent company Analex Corporation, [redacted].

REDACTED VERSION

PATTON BOGGS LLP
ATTORNEYS AT LAW



6. All documents provided to offerors, including negotiation memoranda and any other information provided to offerors concerning their proposals. These documents are relevant to the allegations that DARPA improperly evaluated proposals, failed to address organizational conflict of interest issues, failed to conduct meaningful discussions, and conducted an improper best value determination.

7. All documents evidencing or reflecting any "best value" determinations made by DARPA in its award to BAI. These documents are relevant to the allegations that DARPA improperly evaluated proposals, failed to address organizational conflict of interest issues, failed to conduct meaningful discussions, and conducted an improper best value determination.

8. All slides and other documents relating to DARPA's debriefing provided to Maden Technologies and any other offerors. These documents are relevant to the allegations that DARPA improperly evaluated proposals, failed to address organizational conflict of interest issues, failed to conduct meaningful discussions, and conducted an improper best value determination.

9. All proposals, bids, offers, and other information received by DARPA in response to the Solicitation and amendments to the Solicitation, including documentation reflecting the dates through which all offers were effective. These documents are relevant to the allegations that DARPA improperly evaluated proposals, failed to address organizational conflict of interest issues, failed to conduct meaningful discussions, and conducted an improper best value determination.

10. All documents and information evidencing or reflecting any organizational conflict of interest notifications and mitigation plans submitted by offerors as required by the Solicitation. These documents are relevant to the allegations that DARPA improperly evaluated proposals, failed to address organizational conflict of interest issues, failed to conduct meaningful discussions, and conducted an improper best value determination.

11. All documents and information evidencing or reflecting that any offerors and/or employees of offerors were given access to the project site prior to contract award. These documents are relevant to the allegations that DARPA improperly evaluated proposals, failed to address organizational conflict of interest issues, failed to conduct meaningful discussions, and conducted an improper best value determination.

12. Any documents evidencing or reflecting any disclosures by government employees of their past or current relationship with any of the offerors. These documents are relevant to the allegations that DARPA improperly evaluated proposals, failed to address organizational conflict

REDACTED VERSION

PATTON BOGGS LLP
ATTORNEYS AT LAW



of interest issues, failed to conduct meaningful discussions, and conducted an improper best value determination.

13. Any documents evidencing any key personnel or other labor waiver requests, substitution requests, and approvals, by any of the offerors. These documents are relevant to the allegations that DARPA improperly evaluated proposals, failed to address organizational conflict of interest issues, failed to conduct meaningful discussions, and conducted an improper best value determination.

**REQUEST FOR PROTECTIVE ORDER**

Maden Technologies respectfully requests that the Government Accountability Office issue a Protective Order for this protest.

**SERVICE ON CONTRACTING OFFICER**

A complete copy of this protest is being provided to the DARPA Contracting Officer at the location designated by the Solicitation. A copy is being provided not later than one day after this protest is filed with the GAO.

Respectfully submitted,

PATTON BOGGS, LLP

T. Michael Guiffré
Robert S. Brams
Elizabeth M. Gill

cc: Wade Wargo, Contracting Officer

[redacted]

Redacted Version

4820630
4820630v1

# E

Akerman Senterfitt
ATTORNEYS AT LAW
Wickwire Gavin

Fort Lauderdale
Jacksonville
Los Angeles
Madison
Miami
New York
Orlando
Tallahassee
Tampa
Tysons Corner
Washington, DC
West Palm Beach

Tysons Corner Office
International Gateway
Suite 700
8100 Boone Boulevard
Vienna, Virginia 22182-2683

www.akerman.com

703 790 8750 *tel* 703 448 1801 *fax*

July 28, 2006

VIA FACSIMILE AND ELECTRONIC MAIL

General Counsel
U.S. Government Accountability Office
441 G Street, N.W.
Washington, D.C. 20548

Re: **Protest of STG, Inc. Against the Award of DARPA Contract No. HR0011-06-C-0127**

**Attn: Procurement Law Control Group**

Dear Sir or Madam:

STG, Inc. ("STG"), by its undersigned counsel, hereby protests the decision of the Defense Advanced Research Projects Agency ("DARPA") to award the contract resulting from RFP No. HR0011-06-R-0001, Contract No. HR0011-06-C-0127 (the "Contract"), to Beta Analytics, Inc., a Division of Analex Corporation ("BAI"). STG was notified of DARPA's decision and of the contract award to BAI on July 19, 2006 pursuant to Federal Acquisition Regulation ("FAR") 15.503(b). STG immediately requested a debriefing, and the agency provided the debriefing on July 26, 2006. This protest is timely filed within 5 days of the date of the required and requested debriefing. 4 C.F.R. 21.2(a)(2). Accordingly, DARPA is required to suspend performance of the Contract pending resolution of this protest. 31 U.S.C. § 3553(d)(3).

This protest contains proprietary and/or confidential business information of STG. Accordingly, it should be treated as a document subject to a GAO Protective Order. A redacted copy of this protest will be filed with the GAO and with the agency within one day after the filing of this protest.

**REDACTED VERSION**

## INTRODUCTION

This is a protest of DARPA's award to BAI of the contract resulting from RFP HR0011-06-R-0001, entitled "Contractor Support Services for DARPA's Office of Management Operations/Security and Intelligence Directorate." This was a full and open competition, negotiated procurement conducted under FAR Part 15, to acquire support services for DARPA's Security and Intelligence Directorate ("SID") in developing, implementing, and maintaining programs that facilitate the secure and successful accomplishment of SID's mission while protecting DARPA personnel, information, property, and business continuity. The Contract is a Cost-Plus-Award-Fee contract with a base year and four option periods and, as awarded, has a total contract value of $64,933,539. The RFP provided that the award would be made to the offeror whose proposal was determined to be most advantageous to the Government, cost and other factors considered.

STG protests DARPA's award of the Contract to BAI on the basis that STG submitted the proposal that was most advantageous to the Government, cost and other factors considered. DARPA rated STG's proposal as "[redacted]" in all non-cost factors, which was [redacted] the rating that BAI received. Although BAI had a [redacted] only in the least important non-cost evaluation factor (Past Performance), STG's evaluated price was $[redacted] million, or $[redacted] million lower than BAI's evaluated price. Under the terms of the RFP, cost/price became more important as non-cost factors became closer in technical merit, as was the case here. Accordingly, STG's proposal represented the best value to the Government, and DARPA prejudicially departed from the RFP and the requirements of law and regulation by making the award to BAI. In addition, DARPA mis-evaluated STG's proposal in the factors of Personnel and Past Performance, and it improperly applied cost realism adjustments to STG's price. Had DARPA properly evaluated STG's proposal in these areas, STG would have been rated higher than BAI in the non-cost factors, and the price differential between STG's and BAI's proposed costs would have been even more materially greater. In such circumstances, STG indisputably would have been the best value. Your Office should thus recommend that DARPA terminate BAI's contract and make an award to STG as a best value offeror, as required by the RFP.

## BACKGROUND

### The Solicitation

DARPA issued Solicitation No. HR0011-06-R-0001 (the "RFP" or "Solicitation") on February 13, 2006. The RFP sought proposals leading to a contract for support services in developing, implementing and maintaining programs that facilitate SID's mission while protecting DARPA personnel, information, property, and business continuity. **RFP § 1.1.** DARPA's mission is to maintain the technological superiority of the U.S. military and to prevent technological surprise from harming our national security by sponsoring revolutionary, high-payoff research that bridges the gap between fundamental discoveries and their military use.

---

**RFP § 1.2.** It does so by bringing in expert, entrepreneurial program managers who quickly make decisions about starting, continuing, or stopping research projects without being hampered by bureaucratic red tape. **RFP § 1.2.** SID supports this mission by planning, executing, and directing the information, personnel, industrial, information assurance, and physical security programs at DARPA and at specified contractor sites. SID sought a contractor to provide a high quality professional security staff that would partner with SID to accomplish SID's objectives by using cost-conscious initiative and innovative processes. **RFP § 1.2.** The contractor is to provide and manage personnel and equipment to safeguard DARPA, U.S. Government and other resident property, personnel, and information, and to assure continuity of the DARPA work effort. **RFP § 1.3.** The RFP sought proposals that would result in the award of a Cost-Plus-Award-Fee contract with a one-year base period and four, one-year options. **RFP § L.10.**

**The Evaluation Criteria**

The RFP provided for a "best value" award. The award of the contract was to be made to the responsible offeror whose proposal, conforming to the solicitation, was determined to be most advantageous to the Government, cost and other factors considered. **RFP §§ M.1 and M.2.** The determination of best value to the Government was to be made by examining three non-cost factors: Technical Approach, Personnel, and Past Performance. **RFP § M.1.** The best value determination was to be made using a trade-off process where the technical issues combined were significantly more important than cost/price, although the importance of cost/price was to increase as non-cost factors of the proposal became closer in merit. **RFP §§ M.1 and M.2.** Technical Approach and Personnel were of equal importance and both were of greater importance than Past Performance. **RFP § M.1.**

The Technical Approach Factor included four sub-factors: (1) Understanding of the Statement of Work; (2) Management and Execution of Contract Requirements; (3) Staffing Plan/Teaming Arrangements; and (4) Corporate Support/Facilities. **RFP § M.1.I.** The first three of these sub-factors were of equal importance and were each of higher importance than the fourth, Corporate Support/Facilities.

The Personnel Factor contained no sub-factors, but the RFP provided various considerations concerning the extent to which proposed personnel met (1) general minimum qualification and eligibility requirements (such as, holding applicable security clearances and citizenship); (2) qualifications of their respective functional positions; and demonstrated experience in specified tasks and subtasks, among others. **RFP § M.1.II.** The RFP allowed offerors to propose either currently employed individuals or those providing letters of intent, and it stated that "[a]ssuming the quality of the personnel are the same, an Offeror proposing personnel under Letters of Intent/Commitment will be rated equally as one proposing personnel currently employed. **RFP § M.1.II.** In addition, in Amendment 0004, DARPA set forth its subsequent determination (and admission) that "it is unlikely that any offeror can propose personnel for all 69 FTEs meeting the minimum requirements specified [in ¶ 9.3 of RFP § C]." **RFP § 9.3 (Amendment 0004).** Therefore, the RFP permitted offerors to propose personnel

**REDACTED VERSION**

possessing the capabilities/skills necessary based upon relevant experience, and provided that "[f]or the purpose of evaluating proposals, an offeror must provide resumes that meet the minimum requirements of paragraph 9.3 for a preponderance of the positions/FTEs required in the solicitation. An offeror that submits a preponderance of resumes meeting the FTE's position requirements . . . will be considered at least minimally compliant in this area." **RFP § M.1.II (Amendment 0004).**

The Past Performance Factor included four sub-factors: Timeliness; Quality; Cost Control; and Customer Satisfaction. **RFP § M.1.III.** All sub-factors under Past Performance were of equal importance. The RFP stated that DARPA would evaluate the offeror's recent and "relevant" past performance information. **RFP M.1.III.** The RFP provided that DARPA would consider past performance information relevant "if it addresses similar tasks found in this RFP's Statement of Work and was performed for DoD, one of the services, or the intelligence community." **RFP § L.9.** The RFP did not impose any limitations regarding the size or the subcontractor role of past performance contracts submitted for consideration.

The RFP provided that the Government was to use cost analysis to evaluate the extent the proposed cost/price was reasonable, realistic, and otherwise adhered to the requirements in Section L.15 of the RFP. **RFP § M.1.IV.** The RFP provided as follows with regard to the Cost Realism analysis:

> The Cost Realism evaluation will result in a determination of the most probable cost to the Government for the work to be performed and will assess/verify the Offeror's understanding of the requirements and the degree to which the cost included in the cost volume represents the work effort described in the technical and management volumes. This evaluation may include consideration of actual salaries being paid for similar work under other contracts, the Independent Government Estimate (IGE), Defense Audit Agency audit information, and evaluation of compensation for professional employees . . . . The Government Estimate for level of effort and Other Direct Costs . . . amounts specified in the Section L.15 will be utilized for evaluation purposes. For evaluation purposes only, the evaluated cost is the higher of either (a) the sum of the Offeror's proposed total estimated cost and fee or (b) the Government's determination of the most probable total cost and fee.

**RFP M.1.IV.**

**<u>STG's Offer</u>**

DARPA received five timely proposals, including that of STG. After receipt of initial

**REDACTED VERSION**

proposals, DARPA established a competitive range and conducted written discussions with three offerors. DARPA determined that STG was within the competitive range and provided STG a Negotiation Memorandum identifying the significant weaknesses or deficiencies in STG's proposal. [redacted]

On June 5, 2006, STG responded to the Negotiation Memorandum by submitting a revised proposal that fully responded to each point raised by DARPA in discussions. Specifically, STG updated its proposal [redacted]

**Contract Award and Notification**

By email dated July 19, 2006, DARPA informed STG that it had awarded the Contract to BAI at a base year value of $12,013,757.00 (for CLINs 0001 and 0002 including maximum award fee pool) and a total contract value of $64,933,539.00 (for CLINs 0001 through 0010 including maximum award fee pool). STG immediately requested a debriefing, which it received on July 26, 2006, the first date offered by DARPA.

During the debriefing, DARPA informed STG that it rated STG's revised proposal as being as being very close to BAI's proposal. DARPA assigned the following non-cost ratings to STG and BAI:

| Factor | STG | BAI |
|---|---|---|
| Technical Approach | [redacted] | Green |
| Personnel | [redacted] | Green |
| Past Performance | [redacted] | Blue |

**REDACTED VERSION**

[redacted]

DARPA also informed STG that it made cost realism adjustments to both STG and BAI's cost proposals. DARPA evaluated STG's and BAI's cost proposals as follows:

| **Cost Proposal** | **STG** | **BAI** |
|---|---|---|
| Proposed Cost | $[redacted] | $64,933,539 |
| Evaluated Cost | $[redacted] | $65,800,000 |

Thus, STG's proposed cost was $[redacted], or [redacted] percent lower than BAI's proposed cost, and STG's evaluated cost was $[redacted], or [redacted] percent, lower than BAI's evaluated cost.

[redacted]

[redacted]

[redacted]

REDACTED VERSION

General Counsel
July 28, 2006
Page 7

---

[redacted]

**BASIS FOR PROTEST**

The above facts demonstrate that DARPA departed from the evaluation criteria of the RFP and made an improper award. Specifically, as explained in greater detail below, STG sets forth four grounds of protest. First, DARPA made an improper best value determination because it failed to give proper weight to the substantial cost differential between the proposals submitted by STG and BAI, the importance of which was heightened because STG and BAI were rated [redacted] in the summation of all non-cost factors. [redacted]

1. **DARPA's Best Value Determination Was Inconsistent With The Solicitation, Applicable Law, and Regulation.**

The Solicitation required that DARPA award the contract to the proposal that was most advantageous to the Government, cost and other factors considered. **RFP § M.2.** STG submitted a superior proposal that fully met or exceeded all RFP requirements. DARPA evaluated STG's proposal as being "[redacted]" in all non-cost factors. BAI's proposal was rated essentially equally, also evaluated as being "[redacted]" in all non-cost factors except one. [redacted] Because the proposals of STG and BAI were very close in technical merit, the RFP provided that cost/price became more important as a factor for award. STG's evaluated price of $[redacted] million was $[redacted] million less than that of BAI. Because STG's proposal was [redacted] substantially lower priced than BAI's, STG's proposal was the most advantageous proposal, and DARPA's determination otherwise was unreasonable and in error. By awarding to [redacted] materially higher-priced proposal, DARPA improperly departed from the terms of the Solicitation, and its award decision was in prejudicial violation of law and regulation. In these circumstances, your Office should sustain STG's protest.

2. **DARPA Mis-Evaluated STG in the Personnel Factor.**

In Amendment 0004, DARPA expressly recognized that it would be "unlikely" that any offeror could propose personnel for all 69 FTEs that met the minimum requirements of the RFP.

**REDACTED VERSION**

---

**RFP § 9.3 (Amendment 0004).** Accordingly, DARPA permitted offerors to propose personnel "possessing the capabilities/skills necessary based upon relevant experience." **RFP § 9.3 (Amendment 0004).** Notwithstanding this clear direction, DARPA failed to abide by the RFP because DARPA failed to credit STG when STG proposed personnel who possessed the necessary capabilities based upon their relevant experience.

[redacted] See Global Assocs., Ltd., B-256277, 94-1 CPD ¶ 347 (1994) (experience as an incumbent "is intrinsically related to and encompassed by a general experience evaluation factor.") Based on his extensive and relevant experience, STG's proposed Program Manager clearly possessed the requisite skills and capabilities required for the position. Under the RFP, DARPA should have given STG full credit for proposing this well-qualified incumbent, but instead DARPA wrongfully downgraded STG for proposing him. See Future-Tec Mgmt. Sys., Inc. & Computer & Hi-Tech Mgmt, Inc., B-283793.6, 2000 CPD ¶ 59 (2000) (protest sustained in part because awarding agency could not demonstrate why incumbent personnel did not merit highest evaluation score).

[redacted] DARPA's evaluation of this factor was inconsistent with the RFP and prejudiced STG. Had DARPA properly evaluated STG in this factor, STG would have received a "[redacted]" rating and would have been rated higher than BAI in the technical factors. Thus, your Office should sustain STG's protest on this basis.

3. **DARPA Mis-Evaluated STG in the Past Performance Factor.**

[redacted] The RFP listed four subfactors to be used in evaluating offerors' past performance: timeliness, quality, cost control, and customer satisfaction. **RFP § M.1.III.** None of these four subfactors relate [redacted]

**REDACTED VERSION**

A solicitation is required to describe the factors and significant subfactors that will be used to evaluate the proposal. FAR § 15.203(a)(4). In other words, "[a]n agency may not induce offerors to prepare and submit proposals based on one premise, then make source selection decisions based on another." Mnemonics, Inc., B-290961, 2003 CPD ¶ 39 (2002) (sustaining protest when agency made evaluation "based on factors which were neither disclosed, nor reasonably subsumed within the stated requirements.")

Accordingly, DARPA deviated from the stated evaluation criteria and improperly and unreasonably downgraded STG based on an unstated evaluation subfactor. [redacted] During discussions with an offeror, an agency is required "at a minimum" to identify any "deficiences, significant weaknesses, and adverse past performance information" in the offeror's proposal. FAR § 15.306(d)(3). If STG's past performance information [redacted], as DARPA alleges, DARPA was required to inform STG of this deficiency during discussions. DARPA's failure to conduct meaningful discussions informing STG of the alleged deficiency in its past performance information was unfair and prejudicial to STG. See Ogden Support Servs., Inc., B-270354, 96-1 CPD ¶ 175 (1996) (sustaining protest where agency failed to disclose deficiencies in protestor's proposal during discussions).

Had DARPA properly evaluated STG consistent with the RFP, it would have assigned a "[redacted]" rating in this factor to STG. DARPA's actions prejudiced STG because, had DARPA properly rated STG, [redacted] in all Technical factors. In such circumstances, as the lowest-price offeror, STG unquestionably would have been the best value offeror. Thus, your Office should sustain STG's protest on this basis.

### 4. DARPA Made Improper Cost Realism Adjustments to STG's Proposed Cost.

DARPA made unreasonable cost realism adjustments to STG's cost proposal. [redacted] DARPA's adjustments to them were arbitrary. DARPA's actions prejudiced STG, because they unnecessarily increased STG's evaluated cost. In the absence of DARPA's unreasonable action, the price difference between STG and BAI would have been even greater, and STG clearly would have been the best value offeror. Thus, your Office should sustain STG's protest on this basis.

**REDACTED VERSION**

---

## CONCLUSION

STG was prejudiced by DARPA's failure to make its best value determination in accordance with the evaluation criteria stated in the RFP; by its mis-evaluation of STG's proposal in the Personnel and Past Performance factors; and by its unreasonable cost realism adjustments to STG's proposal. STG's proposal complied in all material respects with the Solicitation's stated requirements and was rated essentially equal to BAI's proposal. Had DARPA properly rated STG's proposal consistent with the stated evaluation criteria of the RFP, STG's proposal would have received a higher rating in the non-cost factors. STG also submitted the lower cost proposal; its evaluated cost/price was $[redacted] million less than BAI's, and had DARPA properly assessed cost realism, the price differential would have been even greater. Even without regard to DARPA's errors in evaluating non-cost and cost realism factors, had DARPA made a proper best value determination consistent with the terms of the Solicitation, it would have determined that STG's proposal represented the best value to the Government, cost and other factors considered. DARPA's errors in evaluating the non-cost and cost realism factors only compounded its failure to make a proper best value determination.

STG respectfully requests a ruling on its protest by the Comptroller General of the United States that DARPA's best value determination and evaluation of non-cost and cost realism factors were unreasonable and inconsistent with the RFP's stated evaluation criteria, and that, as a result, DARPA's decision to award to BAI and not to STG was in violation of the RFP and applicable procurement laws and regulations.

STG respectfully requests that the Comptroller General sustain STG's protest and recommend that:

1. DARPA make a new best value determination consistent with the terms of the RFP, and applicable laws and regulations;

2. DARPA make an award to STG as the best value offeror; and

3. DARPA pay the costs of filing and pursuing the protest, including attorneys' fees.

## REQUIRED INFORMATION

STG, Inc.'s address is 11710 Plaza America Drive, Suite 1200, Reston, Virginia 20190. The point of contact at STG is John C. Weldin and his phone number is 703-691-2480 ext. 212. Akerman Senterfitt Wickwire Gavin's address, telephone and facsimile numbers are printed above. The fax number for the purpose of receiving protected information is (703) 761-2754. The point of contact for this protest will be Claude P. Goddard, Jr. He can be reached by telephone at (703) 790-8750 and by electronic mail at claude.goddard@akerman.com.

**REDACTED VERSION**

STG, Inc. is an actual offeror whose direct economic interest has been affected by DARPA's award to BAI and by DARPA's failure to award the Contract to STG in violation of the RFP and applicable procurement laws and regulations.

The contracting agency is the Defense Advanced Research Projects Agency (DARPA/CMO), 3701 North Fairfax Drive, Room 461, Arlington, VA 22203-1714. The Contracting Officer and designated point of contact is Mr. Wade Wargo. His telephone number is 571-218-4815, and his facsimile number is 703-807-4905. His email address is wade.wargo@darpa.mil.

## DISCOVERY REQUEST

In addition to the documents required in the agency report, STG specifically requests that DARPA provide the following documents:

1) All documents evidencing or reflecting the technical evaluations of STG, BAI and the other offeror within the competitive range. These documents are relevant to the allegations that DARPA improperly made a best value determination and that it failed to evaluate STG's proposal in non-cost and cost realism factors consistent with the evaluation criteria stated in the RFP.

2) All documents evidencing or reflecting the best value determination made by DARPA. These documents are relevant to the allegations that DARPA deviated from the stated selection criteria, and that the DARPA made an improper best value determination.

3) All documents evidencing or reflecting the cost realism evaluations of the cost proposals submitted by STG, BAI and the offeror within the competitive range. These documents are relevant to the allegations that DARPA improperly made a best value determination and that it failed to conduct a proper cost realism evaluation of STG's cost proposal consistent with the evaluation criteria stated in the RFP.

4) All documents evidencing or reflecting the past performance evaluation of STG, BAI and the offeror within the competitive range. These documents are relevant to the allegations that DARPA improperly made a best value determination and that it failed to evaluate STG's past performance consistent with the evaluation criteria stated in the RFP.

5) All documents evidencing or reflecting the work performed on this procurement by the consultant (the "Consultant") who performed the above-referenced Independent Government Estimate (IGE) on behalf of DARPA. Also, all information regarding the methodologies, software and other tools and criteria utilized by the Consultant in performing such IGE. These documents are relevant to the allegations that DARPA improperly made a best value determination and that DARPA deviated from the stated evaluation criteria.

**REDACTED VERSION**

6) All email communications by, between, and/or among the Source Selection Authority, any member of the Technical Evaluation Panel, any member of the Cost Evaluation Panel, and any independent consultant(s) retained to assist in this procurement concerning the evaluation of any offeror's proposal. These documents are relevant to the allegations that DARPA improperly made a best value determination, deviated from the stated evaluation criteria, and failed to conduct a proper cost realism evaluation of STG's cost proposal consistent with the evaluation criteria stated in the RFP.

7) All documents constituting proposals, including any amendments, submitted by offerors within the competitive range. These documents are relevant to the allegations that DARPA improperly made a best value determination.

8) All documents evidencing, reflecting, or constituting presentations made to the Source Selection Authority regarding this procurement. These documents are relevant to the allegations that DARPA improperly made a best value determination, deviated from the stated evaluation criteria, and failed to conduct a proper cost realism evaluation of STG's cost proposal consistent with the evaluation criteria stated in the RFP.

**REQUEST FOR PROTECTIVE ORDER**

STG respectfully requests that the Government Accountability Office issue a Protective Order for this protest.

**SERVICE ON CONTRACTING OFFICER**

A complete copy of this protest is being provided to the DARPA's Contracting Officer and to the location identified in the RFP. The copy is being provided not later than one day after this protest is filed with the GAO.

Respectfully submitted,

**AKERMAN SENTERFITT WICKWIRE GAVIN**

Claude P. Goddard, Jr.
Steven J. Koprince
Counsel for STG, Inc.

cc: Mr. Wade Wargo (Contracting Officer)
Mr. John C. Weldin, Esq. (STG, Inc.)

**REDACTED VERSION**

# Proposed Orders

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MADEN TECH CONSULTING, INC. | ) | |
| Plaintiff, | ) | |
| v. | ) | No. ________ |
| THE UNITED STATES | ) | |
| Defendant, | ) | |

## PRELIMINARY INJUNCTION ORDER

Upon Consideration of Plaintiff, Maden Tech Consulting Inc.'s Motion for a Temporary Restraining Order and Preliminary Injunction, and any opposition thereto, it is

ORDERED, that the Motion for a Preliminary Injunction shall be and is hereby granted; and it is

ORDERED, that Defendant acting by and through the Defense Advanced Research Projects Agency is prohibited from allowing performance on Contract No. HR0011-06-C-0127 pending (i) a decision by the Government Accountability Office on the merits of the protest styled Matter of Maden Technologies, B-298543.2; (ii) other final resolution of the pending Government Accountability Office bid protest action, or (iii) any further action by this Court.

This _____ day of August 2006

_______________________
Judge
United States Court of Federal Claims

4823075

Copies to:

Bryant Snee, Esq.
U.S. Department of Justice
Civil Litigation Branch
Attn: Classification Unit
8th Floor
1100 L Street, NW
Washington D.C. 20530

Paul Pompeo, Esq.
Holland & Knight
2099 Pennsylvania Avenue, NW
Suite 100
Washington, D.C. 20006
Counsel for Beta Analytics International, Inc.

Mary Clarke, Esq.
Defense Advanced Research Projects Agency
3701 Fairfax Drive
Arlington, Virginia 22203-1714.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MADEN TECH CONSULTING, INC. | ) | |
| Plaintiff, | ) | |
| v. | ) | No. ________ |
| THE UNITED STATES | ) | |
| Defendant, | ) | |

TEMPORARY RESTRAINING ORDER

Upon Consideration of Plaintiff, Maden Tech Consulting Inc.'s Motion for a Temporary Restraining Order and Preliminary Injunction, and any opposition thereto, it is

ORDERED, that the Motion for a Temporary Restraining shall be and is hereby granted; and it is

ORDERED, that Defendant acting by and through the Defense Advanced Research Projects Agency is prohibited from allowing performance on Contract No. HR0011-06-C-0127 pending (i) a Court hearing on Plaintiff's Motion for a Preliminary Injunction and a ruling thereon; (ii) a decision by the Government Accountability Office on the merits of the protest styled Matter of Maden Technologies, B-298543.2; or (iii) other final resolution of the pending Government Accountability Office bid protest action.

This _____ day of August 2006

______________________________
Judge
United States Court of Federal Claims

Copies to:

Bryant Snee, Esq.
U.S. Department of Justice
Civil Litigation Branch
Attn: Classification Unit
8th Floor
1100 L Street, NW
Washington D.C. 20530

Paul Pompeo, Esq.
Holland & Knight
2099 Pennsylvania Avenue, NW
Suite 100
Washington, D.C. 20006
Counsel for Beta Analytics International, Inc.

Mary Clarke, Esq.
Defense Advanced Research Projects Agency
3701 Fairfax Drive
Arlington, Virginia 22203-1714.