# Appendix A

 4-6-04

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| BETA ANALYTICS INTERNATIONAL, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES<br><br>Defendant,<br><br>and<br><br>MADEN TECH CONSULTING, INC.<br><br>Intervenor. | Case No. 04-556C<br>Judge Victor J. Wolski |

**INTERVENOR MADEN TECH'S OPPOSITION**
**TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

William L. Walsh, Jr.
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, Virginia 22182
Telephone No.: (703) 760-1600
Telecopier No.: (703) 821-8949

*Of Counsel*
J. Scott Hommer, III
Benjamin A. Winter
Julia M. Kiraly

VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, Virginia 22182

Dated: April 6, 2004

# TABLE OF CONTENTS


**INTRODUCTION** 1

**ARGUMENT** 2

I. Plaintiff Cannot Overcome The High Standard Necessary To Establish Entitlement To The Extraordinary Remedy Of A Preliminary Injunction 2

II. Plaintiff Failed To Establish A Likelihood Of Success On the Merits 3

A. There Is No Merit To Plaintiff's Claim That The Navy's Evaluation Was Irrational, Unreasonable Or Contrary To Law 3

B. Plaintiff Failed To Demonstrate That The Navy's Evaluators Acted In Bad Faith By Interjecting Bias Into The Evaluation 7

C. Plaintiff Failed To Demonstrate Prejudice 9

III. Plaintiff Will Not Suffer Irreparable Harm Absent A Preliminary Injunction 10

IV. A Balance Of The Hardships Tips In Maden Tech's Favor, Not Plaintiff's Favor 12

V. An Injunction In This Case Will Have An Adverse Impact On The Public Interest 13

**CONCLUSION** 15

# TABLE OF AUTHORITIES


| | |
|---|---|
| *AdvanChip Corp.*, B- 282,571, July 29, 1999, 99-2 CPD P 35 | 6 |
| *Alaska Cent. Express, Inc. v. United States*, 51 Fed. Cl. 227 (2001) | 13 |
| *Am-Pro Protective Agency v. United States*, 281 F.3d 1234 (Fed. Cir. 2002) | 9 |
| *Banknote Corp. of America, Inc. v. United States*, 56 Fed. Cl. 377 (2003) | 5 |
| *Bean Stuyvesant, L.L.C. v. United States*, 48 Fed. Cl. 303 (2000) | 4 |
| *Computer Sciences Corp. v. United States*, 51 Fed. Cl. 297 (2002) | 8 |
| *Forestry Surveys and Data v. Unietd States*, 44 Fed. Cl. 493 (1999) | 7 |
| *Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 92221 (D.C. Cir. 1958) | 14 |
| *JWK Intern. Corp. v. U.S.*, 52 Fed.Cl. 650 (2002) | 4 |
| *Kalvar Corp., Inc. v. United States*, 543 F.2d 1298 (Ct. Cl. 1976) | 9 |
| *Magellan Corp. v. United States*, 27 Fed. Cl. 446 (1993) | 11, 12, 14 |
| *National Steel Car, Ltd. v. Canadian Pacific Railway, Ltd.*, 357 F.3d 1319 (Fed. Cir. 2004) | 1, 2, 3 |
| *United States v. John C. Grimberg Co.*, 702 F.2d 1362 (Fed. Cir. 1983) | 1,15 |

## INTRODUCTION

Pursuant to the April 5, 2004 Order of the United States Court of Federal Claims, Intervenor Maden Tech Consulting, Inc. ("Maden Tech") hereby submits this Opposition to Plaintiff Beta Analytics International, Inc.'s ("BAI's") Motion for Preliminary Injunction. To paraphrase the United States Court of Appeals for the Federal Circuit, Plaintiff seeks the "'drastic and extraordinary'" remedy of a preliminary injunction, which "is not to be routinely granted." *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1324 (Fed. Cir. 2004) (quoting *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993)). It has long been the rule that injunctive relief is available "only in extremely limited circumstances." *United States v. John C. Grimberg Co.*, 702 F.2d 1362 1372 (Fed. Cir. 1983). This is not one of those extremely limited circumstances.

Aside from the obvious fact that Plaintiff has failed to establish the factors necessary to secure injunctive relief, it is apparent from the face of the Complaint that Plaintiff is simply trying to turn its disagreement with the source selection authority's reasonable evaluation conclusions into something more. The fact that Plaintiff rested on its hands for weeks before filing this action, and waited until transition was nearly complete and its contract was set to expire, undermines Plaintiff's claim that it will be irreparably harmed. Furthermore, Plaintiff's request for injunctive relief is fatally flawed for failure to demonstrate that it will be prejudiced in any way absent such extraordinary relief. Plaintiff's request for a preliminary injunction serves solely as an effort to delay award so that it, as the incumbent, can continue reaping the benefits of performance in spite of the Navy's rational determination that Maden Tech, the highest rated and lowest priced competitor, offers the best value to the Government. Accordingly, Plaintiff's Motion for Preliminary Injunction should be denied.

## ARGUMENT[1]

5

[redacted]

**I. Plaintiff Cannot Overcome The High Standard2 Necessary To Establish Entitlement To The Extraordinary Remedy Of A Preliminary Injunction**

This Court has observed that "[a] plaintiff bears a 'heavy burden' in requesting injunctive relief and must demonstrate its right to such relief by 'clear and convincing evidence.'" *Washington State Dept. of Servs. for the Blind v. United States*, 58 Fed. Cl. 781, 787 (2003). The United States Court of Appeals for the Federal Circuit has articulated four factors that a protester must establish under this heavy burden to secure the extraordinary remedy of a preliminary injunction: (1) "a likelihood of success on the merits," (2) "irreparable harm in the absence of a preliminary injunction," (3) "a balance of hardships tipping in [the protester's] favor," and (4) "the injunction's favorable impact on the public interest." *Nat'l Steel*, 357 F.3d at 1324-25. A plaintiff such as BAI "is not entitled to a preliminary injunction if [it] fails to demonstrate a likelihood of success on the merits." *Id.* at 1325. Moreover, Plaintiff's failure to demonstrate that it would be irreparably harmed absent injunctive relief is dispositive of the issue. Plaintiff's request for a preliminary injunction therefore must be denied because it cannot overcome the high standard necessary to establish entitlement to such relief.

---

1 To avoid repetition, and focus the argument to the issues at hand, Plaintiff adopts the Statement of Facts set forth in the Government's Opposition to the Plaintiff's Motion for a Preliminary Injunction.

2 As the United States explained in its opposition, the less rigorous standard Plaintiff described in its Motion for Preliminary Injunction is misleading because it applies only when a party has demonstrated serious and irreparable harm and therefore need not make as strong a showing of likelihood of success on the merits. *See* Defendant's Brief in Opposition to Plaintiff's Motion for Preliminary Injunction at n.2. Here, Plaintiff has made no showing of irreparable harm. Plaintiff therefore cannot enjoy application of the lower standard cited in its brief. *See* Motion for Preliminary Injunction at 7.

## II. Plaintiff Failed To Establish A Likelihood Of Success On the Merits

Plaintiff's bid protest is premised on two legal theories: (1) the evaluators failed to adhere to the Solicitation's stated evaluation criteria[3] which is the basis for Counts I-V of Plaintiff's Complaint, and (2) the evaluators were improperly influenced by subjectivity and bias, which is the basis for Count VI of the Complaint.[4] To demonstrate a likelihood of success on the merits of its first theory, Plaintiff must carry the high burden of showing that the Navy's application of the evaluation criteria was arbitrary, capricious or contrary to law,[5] and to demonstrate a likelihood of success on the merits of its second theory, Plaintiff must carry the high burden of showing that the Navy's evaluators acted in bad faith by interjecting bias into the evaluation process. Both of plaintiff's theories fail on the merits.

### A. There Is No Merit To Plaintiff's Claim That The Navy's Evaluation Was Irrational, Unreasonable Or Contrary To Law

In an attempt to turn a lemon into lemonade, Plaintiff has packaged its mere disagreement with the Navy's evaluation as a claim that the Navy failed to adhere to the stated evaluation criteria and applied unstated factors during its assessment of Plaintiff's technical proposal. In the end, however, after parsing out Plaintiff's conclusory

---

3 Plaintiff has framed this argument as an "improper use of unstated criteria." Complaint at ¶¶ 51-84.

4 Plaintiff failed to argue this theory in its Motion for Preliminary Injunction but raised it in Count VI of the Complaint.

5 28 U.S.C. § 1491(b).

statements, the facts reveal that Plaintiff's complaint is nothing more than a mere disagreement with the Navy's evaluation. As this Court has recognized, "[s]uch naked claims, by all appearances unsupported by anything in the record, fall far short of meeting the heavy burden of demonstrating that these findings were the product of an irrational process and hence arbitrary and capricious." *JWK Int'l Corp. v. U.S.*, 52 Fed.Cl. 650, 660 (2002); *see also Bean Stuyvesant, L.L.C. v. United States*, 48 Fed. Cl. 303, 329 (2000) (noting that a mere disagreement with the agency's evaluation "is not sufficient to establish that the [ ] evaluation was unreasonable or arbitrary and capricious.").

BAI's brief is peppered with conclusory statements asserting that the "Navy documents provide no justification for the scoring" but the Plaintiff lacks any supporting facts whatsoever to demonstrate how or why the scoring was arbitrary or unreasonable. Motion for Preliminary Injunction at 9-13. Instead, Plaintiff gripes that it simply did not get the score it thought it should. *Id.* Again, Plaintiff's mere disagreement with the Navy's evaluation does not establish that the evaluation was arbitrary or unreasonable.

Distilled to its essence, Plaintiff alleges that it should have received 13 more evaluation points than the Government actually assigned to its proposal. Motion for Preliminary Injunction at 8-13. For 11 of the 13 points, Plaintiff asserts the meritless theory that the Government should have given BAI's proposal the maximum points available for the particular factor (or subfactor) simply because its proposal merely satisfied, but did not exceed, the minimum requirements of the RFP.6 *Id.* Plaintiff's theory is without factual and legal merit for at least three

6 Plaintiff relies on this theory to complain that it should have received one additional point under the Program Plan factor, two additional points under the Staffing Plan subfactor, two additional points under the Corporate Support subfactor, four additional points under

reasons. First, this was not a "sealed bid" or a "technically acceptable-low cost" procurement where the Government was seeking a minimum level of technical competence because, for example, Section M emphasized technical factors over price. Second, Plaintiff is incorrect in stating that the Solicitation precludes the award of maximum points to only offerors that exceed the requirements; instead, the RFP is silent. Case law establishes that where, as here, the RFP is silent, it is within the discretion of the agency to reserve and apply the maximum points to a proposal that exceeds the minimum requirements. *See, e.g., Banknote Corp. of Amer., Inc. v. United States*, 56 Fed. Cl. 377, 380 (2003) (acknowledging that the agency has discretion in applying the solicitation's evaluation criteria). Furthermore, "[w]here a solicitation calls for an award on the basis of the best value to the government, it is proper for the agency to consider that an offer exceeds the requirements of the solicitation." *AdvanChip Corp.*, B- 282,571, July 29, 1999, 99-2 CPD ¶ 35 (citing *F2M-WSCI*, B-278281, Jan. 14, 1998, 98-1 CPD ¶ 16 at 7-8). 7

Under Plaintiff's theory, an offeror such as Maden Tech would similarly be entitled to receive maximum points since Maden Tech satisfied the minimum requirements of the RFP (Note that this is not an admission that Maden Tech merely satisfied minimum requirements – Maden Tech's higher technical rating resulted from Maden Tech actually

---

the Experience Plan factor, and four additional points under the Personnel factor. Motion for Preliminary Injunction at 8-10.

7 Plaintiff's argument that it was entitled to the maximum number of points under the Personnel factor relies on a misquote of the RFP. Plaintiff quotes the Solicitation as stating that "an Offeror shall receive "[t]he greatest weight when a majority of the key personnel are currently employed by the prime contractor." This is in the Section L ("Instructions") and not in Section M, to which the failure to follow rule applies. In addition, this is actually a sub-element of an evaluation element that establishes that "[t]he Government will give *greater weight* to key personnel who are currently employed with the prime versus key personnel who are proposed under a letter of intent." Solicitation Section L (emphasis added).

8 In challenging its evaluation under the Personnel factor, Plaintiff surmises that the Government inaccurately scored Maden Tech's proposal. However, Plaintiff misreads

exceeding the minimum requirements of the RFP). Therefore, Plaintiff cannot establish prejudice under this theory.
8
For the remaining 2 of the 13 points, Plaintiff converts the text of a criticism about its proposed Staffing Plan into an alleged unstated evaluation criteria. Motion for Preliminary Injunction at 8-13. Plaintiff's theory is without factual and legal merit. Plaintiff's so-called Staffing Plan apparently was merely a statement that Plaintiff was the incumbent contractor. It was not irrational for the Government to recognize that any employer, including the incumbent, must plan for staffing turnover through recruitment and replacement. Plaintiff's Staffing Plan did not. Consequently, the Government's criticism of Plaintiff's bare plan for lacking "explanations for recruitment and replacement of current employees . . ." was justified. Motion for Preliminary Injunction at 9. Similarly, it was not irrational for the Government to recognize that any employer, including the incumbent, must plan for staffing to respond to surges in work requirements. Plaintiff's Staffing Plan did not. Consequently, the Government's criticism of Plaintiff's bare plan for "lack[ing] explanations for . . . capabilities to respond to surge in work requirements . . ." was justified.

Plaintiff next tries to keep its protest afloat by arguing that various weaknesses identified in the debriefing somehow constituted unstated evaluation criteria. For example, the Navy's evaluation of Plaintiff's Staffing Plan contains a comment that "[t]he plan is actually a statement *and lacked explanations for recruitment and replacement of current employees and capabilities to respond to surges in work requirements, etc.*" Motion for Preliminary Injunction at 9 (emphasis in original). Plaintiff makes the untenable argument that the italicized portion of this comment demonstrates that the Navy "applie[d] a requirement that does not appear anywhere in the Solicitation." *Id.* Plaintiff's argument falls short, however, because recruitment and replacement are unquestionably encompassed by the Staffing Plan. This Court has stated that "[w]hen weighing the merits of a proposal under a specific evaluation factor, an agency 'may consider all matters that offerors would reasonably have believed to be within the scope of the factor.'" *Forestry Surveys and Data v. United States*, 44 Fed. Cl. 493, 497 (1999) (quoting *John Cibinic Jr. & Ralph C. Nash Jr., Formation of Government Contracts* 830 (3rd ed. 1998)). Furthermore, "a minor weakness or a single strength can become the determinative factor in an award decision." *Computer Sci. Corp. v. United States*, 51

---

the Solicitation, as discussed in the preceding footnote. Applying the actual language of the Solicitation, it is Maden Tech's belief that its Personnel Plan appropriately received a higher score than Plaintiff.

Fed. Cl. 297, 309 (2002). Thus, the Navy's evaluation comment about recruitment and replacement was appropriate and cannot credibly be characterized as an "unstated evaluation criteria."

As demonstrated above, the facts and law conclusively dispose of each of Plaintiff's arguments and leave no ground of protest that has merit. As a result, Plaintiff's protest is stripped of any probability of success. Because Plaintiff failed to demonstrate a likelihood of success on the merits, its request for a preliminary injunction must be denied.

**B. Plaintiff Failed To Demonstrate That The Navy's Evaluators Acted In Bad Faith By Interjecting Bias Into The Evaluation**

In Count VI of its Complaint, Plaintiff argues that the source selection process was somehow tainted by bias and subjectivity. Complaint at ¶¶ 85-86. Although Plaintiff failed to argue this ground of protest in its Motion for Preliminary Injunction, it nevertheless is worthy of mention here because it stands out as a prime example of the infirmity of Plaintiff's Complaint.

Plaintiff claims a laundry list of purported improprieties that it asserts demonstrate bias and subjectivity.[9] Of particular note is Plaintiff's claim that "[o]n information and belief Ms. Kopach is the COR or POC for the

---

9 Plaintiff's Complaint states "[o]n information and belief Plaintiff avers that the pattern of application of unstated criteria, selection standards that have no demonstrable relationship to the Solicitation requirements, stated standards, and contract performance, the requirement of uncompensated effort to secure outstanding scores, Ms. Kopach's unusually close relationship with Maden, inclusion of Mr. Bailey in the reviewing team and exclusion of Ms. Kasner from the Solicitation process entirely indicates a likelihood that the Procure [sic] was awarded unlawfully based upon bias and/or prejudice." Complaint at ¶ 86.

Technology Integration Center (TIC) and has a long-standing relationship with Maden Tech." Complaint at ¶ 44. Plaintiff's complaint ignores the logical inference that Ms. Kopach has a long-standing relationship with Maden Tech *because she is the Program Manager for TIC*. Maden Tech is the prime contractor for TIC. As the Navy's program manager for TIC, Ms. Kopach is *required* to have a relationship with its prime contractor. The same logic applies to Plaintiff's claim that Patrick Bailey "has a long history of working with SRA a Maden subcontractor." Complaint at ¶ 45. These are but two illustrations of the many ways in which Plaintiff's claim of bias is baseless.

In addition to the fact that Plaintiff's claim of bias is factually unsound, Plaintiff's argument also fails because it is legally unsound. It is well established that:

> Any analysis of a question of Governmental bad faith must begin with the presumption that public officials act 'conscientiously in the discharge of their duties.' The court has always been 'loath to find to the contrary,' and it requires 'well-nigh irrefragable proof' to induce the court to abandon the presumption of good faith dealing.
>
> In the cases where the court has considered allegations of bad faith, the necessary 'irrefragable proof' has been equated with evidence of some specific intent to injure the plaintiff.

*Kalvar Corp., Inc. v. United States*, 543 F.2d 1298, 1301 (Ct. Cl. 1976). The Federal Circuit recently indicated that the standard for well-nigh irrefragable proof is a requirement for clear and convincing evidence. *Am-Pro Protective Agency v. United States*, 281 F.3d 1234, 1239-40 (Fed. Cir. 2002). Plaintiff's conclusory statement in support of its claim of bias patently fails to rise to the level of clear and convincing evidence that the Navy's evaluators had a specific intent to harm Plaintiff.

Like its other claims, Plaintiff's claim of bias and subjectivity lacks any foundation in fact or law and serves as a prime example of Plaintiff's inability to demonstrate a likelihood of success on the merits. Because there is no

basis in fact or law to support Plaintiff's claim of bias and subjectivity, this ground cannot possibly support the request for injunctive relief.

### C. Plaintiff Failed To Demonstrate Prejudice

Plaintiff cannot demonstrate prejudice. Maden Tech was rated higher technically than BAI and Maden Tech offered a cost lower than BAI. Therefore, the Government did not need to perform a cost-technical tradeoff best value decision. Plaintiff alleges it has been prejudiced only because it believes that it deserved to receive a higher technical score. BAI does not argue, or even suggest, that it should be rated higher technically than Maden Tech after the re-scoring of its proposal. This is no doubt attributable to the fact that Plaintiff recognizes that, under its theory, an offeror such as Maden Tech would similarly be entitled to receive the maximum points available since Maden Tech satisfied the minimum requirements of the RFP. Thus, even if Plaintiff were correct about the use of unstated criteria it still would be rated lower technically than Maden Tech and Maden Tech would still have the lower cost, thereby requiring award to Maden Tech.

## VI. Plaintiff Will Not Suffer Irreparable Harm Absent A Preliminary Injunction

BAI has not demonstrated, nor can it demonstrate, that it will suffer irreparable harm if the Court denies its motion for a preliminary injunction. The injury that BAI alleges will occur is relevant only to its request for permanent injunctive relief, not to its request for a preliminary injunction. Furthermore, the fact that BAI will have to rehire employees should it ultimately succeed is not the type of irreparable harm adequate to invoke the Court's equitable powers. Therefore, the Court should deny Plaintiff's motion for a preliminary injunction.

The scope of the Court's inquiry is restricted to considering injury that BAI allegedly will suffer if Maden Tech continues to perform the contract during this litigation. *See Magellan Corp. v. United States*, 27 Fed. Cl. 446, 447 (1993) ("The limited question is whether the status quo ante should be maintained" through the litigation of plaintiff's request for permanent relief). BAI, however, asserts injuries that will occur only should Maden Tech perform the entire contract.

For example, BAI asserts that it was "denied an opportunity to have its offer fairly and equally considered" and that, consequently, it will be injured if the Court does not issue a preliminary injunction because it will lose the opportunity to perform the contract. This argument must fail. BAI will not lose the opportunity to have its offer fairly and equally considered if the Court denies its motion for preliminary injunction. Rather, BAI will have the ability to continue to press its request for permanent injunctive relief for resolution well before complete performance of this sixty month contract.

The case law cited by BAI in support of its argument that it will lose the opportunity to perform the contract should Maden Tech continue to perform during the litigation is unavailing. In this regard, Plaintiff cites *Magellan Corp. v. United States*, for the broad proposition that a protester does not have an adequate remedy, outside of injunctive relief, when it is deprived of the opportunity to have its offer fairly and equally considered. The proposition established by *Magellan*, however, is too limited for Plaintiff to rely upon since it is premised on a unique set of facts not present here. In *Magellan*, the Plaintiff had been eliminated in the first stage of a two stage procurement. *Id.* at 447. The protester submitted its complaint while the competition continued. *Id.* Thus, the Court found that allowing the procurement to continue without the plaintiff would work significant harm on the contractor because it would be unlikely to gain permanent injunctive relief from the Court after the government had

selected an awardee. *Id.* No such harm, however, will occur in the instant case.

BAI also asserts that it will be irreparably harmed if Maden Tech continues to perform the contract during the litigation because Maden Tech will hire BAI employees. Plaintiff complains that it will not be able to offer these employees to the government should the Court ultimately rule in its favor. This injury is hardly the type of irreparable harm required to establish the need for a preliminary injunction. Assuming that the Court finds for Plaintiff, BAI will not be prohibited from entering the marketplace to hire back its old employees. Thus, there is no irreparable injury here.

In conclusion, BAI has failed to establish that it will be irreparably harmed should Maden Tech continue to perform the contract during the litigation of its request for permanent relief.

## VII. A Balance Of The Hardships Tips In Maden Tech's Favor, Not Plaintiff's Favor

BAI is not entitled to a preliminary injunction because of the substantial injury such an injunction will cause to other parties including Maden Tech and its employees. Maden Tech has already expended significant money and effort in transitioning onto the contract. Furthermore, Maden Tech and its subcontractors have extended numerous offers to employees to work on the contract. Therefore, the Court should deny Plaintiff's motion for a preliminary injunction.

Two-thirds of the transition period has elapsed and the beginning of contract performance is only one week away. Maden Tech has responsibly endeavored to be prepared for the start of the contract through a myriad of methods. For example, on March 22, 2004, Maden Tech held an open house at the Arlington Hilton and Towers for prospective employees. Maden Tech reviewed applications submitted at the Open House, extended offers and hired

new employees. The hiring process required extensive efforts to introduce the new employees to Maden Tech. Further, Maden Tech is committed to certain employees. If the Court issues a preliminary injunction, Maden Tech will have no work for those employees and will have to lay off several workers.

Finally, while the type of injury asserted herein by Maden Tech appears similar to the injury asserted by BAI in support of its motion for preliminary injunction, it is important to note that Maden Tech faces a higher burden in recruiting the incumbent workforce because it is a stranger to those employees. BAI, as the incumbent contractor, will not have this problem. Furthermore, the Court has recognized that: "'[R]elief saving one claimant from irreparable injury, at the expense of similar harm caused another, might not qualify as the equitable judgment that a stay represents.'" *Alaska Cent. Express, Inc. v. United States*, 51 Fed. Cl. 227, 232 (2001) (quoting *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)). Thus, the Court should deny Plaintiff's motion for a preliminary injunction because the substantial injury to Maden Tech will outweigh the negligible injury, if any, to BAI.

**VIII. An Injunction In This Case Will Have An Adverse Impact On The Public Interest**

Plaintiff is not entitled to a preliminary injunction because the requested relief will have an adverse impact on the public interest. Plaintiff's assertion that the issuance of a preliminary injunction will create greater competition is facially incorrect. Further, the plaintiff's arguments fail to consider the public's interest in a swift, efficient procurement. Therefore, the Court should deny Plaintiff's motion for a preliminary judgment.

Plaintiff argues that the public interest will be served by a preliminary injunction because it will result in greater competition and less cost to the government. Again, BAI misapplies the ruling in *Magellan v. United States*.

In *Magellan*, the issuance of a preliminary injunction would have resulted in greater competition[10] because it would have allowed Magellan to continue on into the second phase of the procurement, adding one more offeror to the pool. 27 Fed. Cl. at 448. In the instant case, however, the Government has already considered BAI's proposal. Granting its motion will not result in the addition of previously unconsidered offers. Instead, it will only give BAI another shot at the apple.

BAI also conveniently fails to note the Court's concern in *Magellan* regarding the need for swift and efficient contracting procedures. In *Magellan*, the Court stated that, "the legislative history to the court's injunction statute indicates that Congress felt that the government should be able to conduct procurements expeditiously and with as little judicial intrusion as possible into the government's discretion." *Id.*; *see also Minor Metals, Inc. v. United States*, 38 Fed. Cl. 379, 382 (1997). Similarly, the Federal Circuit has warned that the Court's limited equitable powers "should be exercised in a way which best limits judicial interference in contract procurement." *United States v. John C. Grimberg Co.*, 702 F.2d 1362 (Fed. Cir. 1983). Granting BAI's motion for a preliminary injunction will only further delay the government's procurement process.

Finally, BAI's arguments that Maden Tech's continued performance will harm the public interest ring false when considering that, apparently, Maden Tech's offer was approximately half a million dollars less than BAI and offered significant technical advantages. Thus, if the Court orders Maden Tech to stop work, it will be enjoining the performance of the offeror representing the best value to the government and replacing it with a more expensive yet inferior contractor. In other words, maintaining the status quo, as Plaintiff requests, is adverse to the public interest

---

10 The court ultimately denied the plaintiff's motion.

because it would result in performance by a costlier and less effective contractor.

In conclusion, the Court should deny plaintiff's motion for a preliminary injunction because the issuance of such relief will have an adverse impact on the public interest.

**CONCLUSION**

For the reasons stated above, the Court should DENY Plaintiff's Motion for Preliminary Injunction.

Respectfully submitted,

/s/

William L. Walsh, Jr.
Venable LLP
8010 Towers Crescent Drive, Suite 300
Vienna, Virginia 22182
Telephone no.: (703) 760-1985

Telecopier no.: (703) 821-8949

*Of Counsel:*

J. Scott Hommer, III
Julia M. Kiraly

Benjamin A. Winter

Venable LLP
8010 Towers Crescent Drive, Suite 300

Vienna, Virginia 22182
Telephone no.: (703) 760-1600
Telecopier no.: (703) 821-8949

*Counsel to Intervenor Maden Tech Consulting, Inc.*

Dated: April 6, 2004

::ODMAPCDOCS\MC1DOCS1\161171\2

**CERTIFICATE OF SERVICE**

This is to certify that, on this 6th day of April, 2004, I caused copies of the foregoing Opposition to Plaintiff's Motion to Intervene to be delivered via e-mail to the following:

James Colt
Commercial Litigation Branch
Civil Division
United States Department of Justice
1100 L Street, N.W., Suite 12018

Washington, D.C. 20530

(202) 307-0290
(202) 514-8624 (fax)
James.Colt@usdoj.gov

Mark L. Shaffer
Shaffer, Bock & Antonoplos P.L.L.C.
1211 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 223-3210
Shaffer@shafferbockanton.com

/s/
Benjamin A. Winter