# Appendix B

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MADEN TECH CONSULTING, INC. | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-585 (Judge Braden) |
| THE UNITED STATES, | ) | |
| Defendant, and | ) | |
| BETA ANALYTICS INTERNATIONAL, INC., | ) | |
| Intervenor | ) | |

Declaration of J. B. Copeland

I, J. B. Copeland, declare and say under penalty of perjury that the following statements are true and correct to the best of my knowledge:

1. I am over 18 years of age and competent to make this declaration in this matter.

2. This declaration is provided to explain the potential harm that would be caused if the Court were to prevent the Government from continuing the services currently being provided by Beta Analytics International, Inc. (BAI).

3. I am the Director, Security and Intelligence Directorate, Defense Advanced Research Projects Agency (DARPA). DARPA is an agency of the Department of Defense. I have held the Director's position since October, 2004. In my current position I supervise eleven other government employees that are assigned to various functions within security.

4. Also under my cognizance, there are currently two contracts providing security services to DARPA, one of which, Frontier Systems Integrators, is concerned primarily with the provision of uniformed security officers, functions associated with the Department of Defense Antiterrorism Program, and functions related to physical and technical security survey and inspection functions. In addition, I oversee the performance of the contract with BAI. I also oversaw the performance of the prior contract to Maden Tech which expired on July 31, 2006. I am familiar with the way DARPA does business and how work provided by the security services contract supports the DARPA business processes.

5. DARPA is involved in over 1,500 classified contracts which involve information that must be protected through appropriate classification. Many of the classified contracts require additional protection than that for collateral classified programs (i.e., programs that are classified at the confidential, secret, and top secret level) that is achieved through a formal process designating them as Special Access Programs (SAPs) and many of them involve Sensitive Compartmented Information (SCI). SAP Controls are used only when exceptional security measures are required to protect the information contained within the SAP. There are only three levels of classification, confidential, secret, and top secret. These levels have prescribed protective measures associated with them, with the most stringent measures applied to top secret material. SAPs have additional protective measures that exceed the top secret protective measures required for non-SAP information. Likewise, SCI has additional protective measures above those required for collateral classified information. SCI information is that classified information that is derived from intelligence sources and is under the purview of the Director, National Intelligence who prescribes protective measures for all SCI material.

6. If the security services being performed under the BAI contract were to cease, the Government interest would be seriously harmed in the following manner:

A. Government classified contracting would cease. Letting a classified contract requires that the government specify security requirements in the contractual documents. This is accomplished through the use of the DD Form 254, Contract Security Classification Specification. The DD Form 254 is drafted specific to the work to be done on the contract, and the inclusion of specific clauses in the contractual document. This function is performed under the BAI contract.

B. DARPA could not hire new employees. A Personnel Security Clearance is granted based on a background investigation of a person's character and conduct to determine if a person should be trusted to have access to classified national defense information. A person cannot do classified work unless he or she has a security clearance. Paperwork to start the process, training of new personnel and the badging process (i.e., the making of an identification badge that indicates the wearer's clearance level and provides access to the building via an electronic reader) is performed under the BAI contract.

C. No additional Facility Security Clearances could be obtained. A company cannot do classified work unless the company has a security clearance, referred to as a "Facility Security Clearance". For DARPA work, DARPA must sponsor the clearance to DSS for contractors who do not have a clearance or verify that the company has one appropriate for the level of work associated with the contract (e.g., Top Secret work requires a top secret clearance). This support function is performed under the BAI contract.

D. Classification of new program would cease and thus no new programs could begin. A determination must be made as to what security levels (top secret, secret, or confidential) and as to what accesses (SAP or SCI) are appropriate for the information or material associated with classified work. These clearance and access determinations are made in close collaboration between the security subject matter expert (SME) and the technical SME, and if a transition partner is involved (e.g., U.S. Army), their SME. The security SME performs this function under the BAI contract.

E. DARPA could not receive or distribute classified information. Classified documents must be handled, accounted for, and safeguarded to prevent the unauthorized disclosure of the classified information contained in the documents. Failure to adequately protect them can be a violation of statutes under Title 18, US Criminal Code. The day-to-day responsibility for the effectiveness of this system of handling, accountability, and protecting the documents rests with the security SME assigned to this area. Business involving classified information cannot be conducted unless this function is adequately performed. For example, a classified document (say a Security Classification Guide, which is itself often classified, and is used to provide specific classification guidance for the specific work to be performed on a contract) needs to be shipped to a contractor, which means that it must be properly marked, packaged (wrapped) and mailed to an authorized location via an authorized means. How it is shipped depends on whether or not it is collateral, SAP, or SCI. Further, the document must be removed from the losing organization's books and receipt by the gaining organization must be determined by the losing organization to assure that it got to where it was meant to go to. These functions are performed under the BAI contract.

F. DARPA and their classified performers could not lawfully process information on the computer systems and could not accredit new classified systems. The fact is that DARPA, like many other federal and state agencies and private individuals are under daily attack through cyberspace. Thus far, DARPA computer systems have not been penetrated. This fact is directly attributable to the constant and real-time proactive involvement of the DARPA computer security SME contractors and to their close and active partnership with the information technology specialists to anticipate and prevent the attacks. Stopping their ability to work puts the DARPA computer systems and the confidentiality, integrity, and availability of the information contained in these systems at risk. Further, because of DARPA's connectivity to other computer systems, it puts other agencies and their systems at risk and potentially raises the burden that the taxpayer carries on its shoulders because of what it would cost to cleanse and restore the systems should an attack be successful. Further, various statutes and acts require that DARPA conduct due diligence of their systems (e.g., Federal Information Security Management Act (FISMA). These functions are performed under the BAI contract.

G. DAPRA could not disclose any technical information to the public. DARPA, as with any other research entity thrives on the exchange of information with a broad spectrum of the technical spectrum of society, both national and international. The idea is to find good ideas wherever they are, prove they work via accelerated research, and to put them to practical use in the hands of our warriors, preserving their technological superiority on the battlefield and saving their lives. However, information is not shared willy-nilly; DoD requires that information that is to be released to the "public" be reviewed for three reasons: 1) to make sure that it does not contain classified information; 2) to make sure that its publication does not violate restrictions imposed by the International Traffic in Arms Regulation (ITAR) or Export Administration Regulations (EAR); and 3) to make sure that the information conforms to current DoD policy. Two of those reviews are conducted by security SME. Failure to conduct these reviews prohibits the release of the information. These functions are performed under the BAI contract.

H. For information that is to be disclosed to foreign nationals, a determination must be made that it is in the best interest of the government and national security to share the information with the foreign interest and these decisions must be coordinated with OSD to assure they meet national objectives. Various documents and processes are associated with this effort: Designated Disclosure Letters (DDL), Project Arrangements (PA), and Technology Assessment and Control Plans (TACP) are a few such documents and result from close collaboration between the security and technical SMEs, coupled with close coordination with the Office of the Secretary of Defense (OSD) representatives for these matters. Failure to conduct the necessary processes prohibits the sharing of the information. These functions are performed under the BAI contract.

I. DARPA's ability to conduct classified business with other agencies and performers would cease. When a person travels from their home organization to a host organization to conduct classified work, DoD requires that the home organization certify the individual's clearance to the host organization. The host organization must verify the clearance when the visitor arrives at their location. Appropriate records are required to be kept at both ends. Unless these processes take place, the work cannot be lawfully conducted. There are specific processes and tool associated with this work for SAP, SCI, and collateral classified information. In CY 2005, 13,200 visitors conducted 41,218 visits to DARPA. These functions are performed under the BAI contract.

J. DARPA employees and contractor would not have access to DAPRA and other classified buildings. There are various identification cards or badges used as a visual and/or electronic aid to facilitate a person's identification and access to a facility or computer system or both. These range from the DoD-Wide Common Access Card (CAC) which allows a person to log onto a computer and to send digitally signed and encrypted email and to gain access to facilities within

The National Capitol Region; to a Courier Card which authorizes a person to receive and carry classified material; to the DARPA identification badge which identifies the person to DARPA security guards; indicates the person's security clearance level, and provides electronic access to and within the DARPA facility. These badges must be kept current (i.e., turned on or off), depending on the person's current status. Failure to issue and keep the "badges" current would result in a person not being able to do the things already detailed. These functions are performed under the BAI contract.

K. DARPA and its performers could not process classified information on their classified computer systems and they could not store classified information in their facilities. To assure that information is adequately protected, DoD requires that certain standards be used for the storage and processing of classified information. The process that is used to assure that facilities and computing systems meet these standards is referred to as Certification and Accreditation. Briefly stated, the certifying official (normally a contractor who is a security SME) certifies that a facility or computer system is ready for accreditation and the accrediting official (normally a government official) verifies the validity of the certification and accredits the system or facility, by, in the case of a computer system, issuing an Authority to Operate (ATO). The certification, which is a formal document, results from on-site inspection of the system/facility and a review of the associated paperwork, such as an Automated Information System Security Plan or the preparation of a Fixed Facility Check Sheet. Without the ATO, information cannot be introduced into or maintained in the facility or introduced to or maintained on a computer system; consequently, the technicians cannot do their work.

7. DARPA does not have the internal capacity to do the work done by BAI. As mentioned above, counting myself, there are twelve government employees assigned to the Security and Intelligence Directorate, one of which is an administrative support person. We simply could not handle the volume of work done by the contractor in addition to the work that is inherently government work. In some cases, such as the computer security function, none of the government staff have the necessary skill levels to do the work.

8. Based on my experience with DARPA and in the security field, I would estimate that there would be a significant impact of the ability of DARPA to do classified business, with perhaps as high as 90% of the classified work currently being done having to stop. In making this estimate, I brought to mind the economic impact that the stopping of the work would have on the performers out in the field, where things are designed and built to test DARPA ideas.

I declare, under penalty of perjury, that the information given above is true and Correct, to the best of my knowledge.

J. B. Copeland

22 August 2006
Date