IN THE UNITED STATES COURT OF FEDERAL CLAIMS

MADEN TECH CONSULTING, INC.

Plaintiff,

v.

THE UNITED STATES

Defendant,

and

BETA ANALYTICS INTERNATIONAL

Defendant-Intervenor.

No. 06-585
(Judge Braden)

# PLAINTIFF'S REPLY TO DEFENDANT AND INTERVENOR'S OPPOSITIONS TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND DECLARATORY RELIEF

Dated: August 23, 2006

T. Michael Guiffré
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6441
(202) 457-6315 (Fax)

Attorney of Record for
Maden Tech Consulting, Inc.

Of Counsel:
Robert S. Brams
Elizabeth M. Gill
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037

# TABLE OF CONTENTS


**Brief** **Page(s)**

BRIEF ....................1

I. INTRODUCTION ....................1

II. ARGUMENT ....................2

A. The Automatic Stay Provision is a Congressionally Mandated Presumption ....................2

B. The Government Cannot Avoid Judicial Review Based on a Blanket Assertion of "National Security" ....................3

C. Maden Tech is Entitled to Declaratory Relief Because DARPA's Override Decision was Arbitrary and Capricious ....................6

1. The Standards of Review for Declaratory Relief ....................6

2. The DARPA Officials Who Issued the Override Determinations Lacked Authority ....................7

3. Even if It Had Acted Within the Scope of Its Authority, DARPA's Override Was Not Based on the Relevant Factors ....................8

D. DARPA and Intervenor Misstate the Standard of Review for Injunctive Relief ....................12

E. The Government's Claim that It Cannot Extend the Predecessor Contract Even if It Violated the CICA Stay is Wrong ....................13

III. CONCLUSION ....................14

EXHIBITS

Declaration of Glenn Gearhard ....................Ex. D

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Advanced Sys. Dev., Inc. v. United States*,
No. 06-484, 2006 WL 2130548 (Fed. Cl., Jul. 21, 2006) ....................................2, 3, 8, 12-13

*Altos Federal Group, Inc. v. United States*
60 Fed. Cl. 832.....................................................................................................13

*Beta Analytics Int'l, Inc. v. United States*, 69 Fed. Cl. 431 (2005) ..........................................1

*Chapman Law Firm v. United States*, 65 Fed. Cl. 422 (2005) ...............................................12

*Cigna Gov't Servs. v. United States*,
70 Fed. Cl. 100 (2006) ............................................................................3, 9, 13

*Citizens to Preserve Overton Park v. Volpe*,
401 U.S. 402 (1971)..................................................................................6, 8, 12

*Kropp Holdings, Inc. v. United States*
63 Fed. Cl. 537 (2005) ..............................................................................3 - 9, 12, 13

*Overstreet Electric Co. v. United States*,
59 Fed. Cl. 99 (2003).......................................................................................4, 7

*PGBA, LLC v. United States*,
57 Fed. Cl. 655 (2003) ..........................................................................................2

*Universal Shipping Co. v. United States*, 652 F. Supp. 668 (D.D.C. 1987)............................11, 14

**Statutes and Regulations**

31 U.S.C. § 3553 (d)(3)(c). ...................................................................................2-3, 6-7, 9

FAR 33.104(c)(2) ..........................................................................................................7

**Miscellaneous**

Judith A. Sukol, *The Competition in Contracting Act's Automatic Stay Provision and Judicial Review: A Trap for the Unwary*, 43 Admin. L. Rev. 493, 443 (Summer 1991)........2, 3, 9

Statement by Tony Tether, Director DARPA, to Subcommittee on Terrorism, Unconventional Threats and Capabilities; House Armed Service Committee, U.S. House of Representatives March 10, 2005 ..................................................5

Department of Defense Directive Number 5134.10, February 17, 1995.:......................7

http://www.defenselink.mil/pubs/dod101/dod101_for_2002.html ..............................4

http://www.darpa.mil/body/news/2005/darpa_hasc_3_10_05_final.pdf (at 1)..........5

http://www.darpa.mil/body/overtheyears.html..........5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MADEN TECH CONSULTING, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES<br><br>Defendant,<br><br>and<br><br>BETA ANALYTICS INTERNATIONAL<br><br>Defendant-Intervenor. | ) | No. 06-585<br>(Judge Braden) |

PLAINTIFF'S REPLY TO DEFENDANT AND INTERVENOR'S OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

Plaintiff Maden Tech Consulting, Inc. ("Maden Tech"), by counsel, hereby submits its reply memorandum in support of its Motion for a Temporary Restraining Order, Preliminary Injunction and Declaratory Relief (the "Motion").[1]

## I. INTRODUCTION

Throughout these series of procurements, DARPA has consistently failed to meet its statutory and regulatory obligations to ensure full and open competition in contracting. The original contract DARPA let for these services was arbitrary and capricious. *Beta Analytics Int'l, Inc. v United States*, 69 Fed. Cl. 431, 433 (2005). After a court ordered reprocurement of the contract services, two of the three offerors in the competitive range for award challenged the agency's actions as arbitrary and capricious through bid protest actions at the GAO. DARPA then issued an override

[1] To the extent that Plaintiff does not address a particular argument set forth in Defendant's or Intervenor's Oppositions, Plaintiff does not waive its Motion on that issue, but rather relies on the argument and evidence set forth in its opening brief and the matters to be addressed at the hearing on Plaintiff's Motion. All acronyms and references to exhibits relate back Plaintiff's opening brief (*i.e.*, a reference to Exhibit A herein refers to the exhibit attached to the opening brief).

4825222

decision of the automatic stay, and DARPA's written justification reveals the same disregard of its statutory and regulatory obligations.

In issuing its override decision, DARPA failed to analyze the relevant factors and justify its determination. DARPA did not, and cannot, explain how it would be harmed if the BAI's continued performance was stayed. DARPA did not evaluate whether it could have achieved the same objectives without permitting BAI to continue performance, for example by extending Maden Tech's bridge contract again, by utilizing the services of another DARPA's contractor, or by acquiring the services from another contractor. Instead, DARPA makes only the blanket assertion that its decision is proper in the interests of "national security," and that the Court therefore cannot even review its decision. For the reasons set forth in Plaintiff's Motion and below, given DARPA's errors in judgment, the Court should issue injunctive and declaratory relief by setting aside DARPA's override decision.

## II. ARGUMENT

### A. The Automatic Stay Provision is a Congressionally Mandated Presumption

The Government fails to acknowledge that pursuant to the Competition in Contracting Act ("CICA"), 31 U.S.C. § 3553 *et seq.*, there is a Congressional mandate that "proscribes contract award and contract performance when a protest is filed within the specified time period and only allows the agency to continue procurement actions when certain enumerated findings are made." Judith A. Sukol, *The Competition in Contracting Act's Automatic Stay Provision and Judicial Review: A Trap for the Unwary*, 43 Admin. L. Rev. 493, 443 (Summer 1991) ("Sukol") (emphasis added). The statutorily required stay of contract performance is "intended to preserve the status quo during the pendency of the protest so that an agency would not cavalierly disregard the GAO's recommendation to cancel the challenged award." *Advanced Sys. Dev, Inc. v. United States*, No. 06-484, 2006 WL 2130548 (Fed. Cl., Jul. 21, 2006), citing *PGBA, LLC v. United States*, 57 Fed. Cl. 655 (2003). "The overarching

goal of the stay is to preserve competition in contracting and ensure a fair and effective process at GAO."[2] *Id.*

Thus, "the whole point of the CICA stay provision is to ensure that the statutory mandate for competition is enforced." *Cigna Gov't Servs. v. United States*, 70 Fed. Cl. 100, 112 (2006). An agency "may only override the automatic stay upon a proper determination that the best interests of the United States outweigh this Congressional policy." *Advanced Sys. Dev., Inc.*, No. 06-484, 2006 WL 2130548. "CICA provides for an override of the automatic stay only where the head of the contracting agency determines that '(i) performance of the contract is in the best interests of the United States; or (ii) urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General concerning the protest.'" *Cigna Gov't Servs.*, 70 Fed. Cl. at 110, citing 31 U.S.C. § 3553(d)(3)(C).

**B. The Government Cannot Avoid Judicial Review Based on a Blanket Assertion of "National Security"**

The Government attempts to avoid justifying its override decision by making the blanket assertion that the override was "due to the legitimate national security interests in this case." Opp. at 12. This Court's decision in *Kropp Holdings* establishes that the Government's claim of "national security" to cloak the merits of its override decision is insufficient to evade judicial inquiry. *Kropp Holdings, Inc. v. United States*, 63 Fed. Cl. 537, 551 (2005). *Kropp Holdings* states that is not necessary to reach the merits of whether CICA was violated where "legitimate interests of national defense and national security have been asserted **and established to the court's satisfaction.**" *Kropp Holdings*, 63 Fed. Cl. at 549 (emphasis added) (internal citations omitted). In fact, the Court makes clear that it is "not holding that an override decision is not justiciable, nor that, in all cases where 'interests of

---

2 "Rather than expressing an intent to give deference to the agency, CICA's legislative history clearly indicates that agency action was intended to be curbed by the Act. An analysis of the history and purpose of CICA reveals that the Act was an attempt to remedy defects in the bid protest law by ensuring that agencies did not foreclose protesters from effective remedies." Sukol at 446.

national defense or national security' are asserted, the court should not exercise jurisdiction." *Kropp Holdings*, 63 Fed. Cl. at 549. Therefore, the Government must do more than simply claim the contested procurement relates to national security. It must establish to the Court's satisfaction that a "weakness in national security" would result from a stay in performance. *Id.* (quoting *Overstreet Electric Co. v. United States*, 59 Fed. Cl. 99, 118-19 (2003)).

DARPA fails to explain, much less establish, why the national security would be endangered if there were a stay of BAI's performance. The Combined D&F is limited to merely stating that the services being procured would support the agency's mission and responsibilities. Exhibit A at ¶¶ 1.a through 1.d; Exhibit B at ¶¶ a-d. The Government's opposition to the Motion simply repeats and expands on the Combined D&F's description of DARPA's mission and the support services being procured, but again makes *no attempt* to explain why the stay would endanger the national security. Opp. at 2-8. If the Court were to accept this "evidence" as sufficient to avoid judicial scrutiny of an override decision, the Court would have no authority to review any override decision concerning a Department of Defense ("DoD") contract because DoD's mission is "to provide the military forces needed to deter war and to protect the security of the United States" and "everything we do supports that primary mission."[3]

Even if the Court were to rely solely on DARPA's mission to determine whether the national security precludes judicial review of its override decision, DARPA's mission is substantially different than every other DoD agency's mission:

> DARPA is the Department of Defense's (DoD) only research agency not tied to a specific operational mission. DARPA is designed to be the "technological engine" for transformation, supplying advanced capabilities, based on revolutionary technological options for the entire Department.
>
> This is a unique role within DoD. The Department's operational components naturally focus on nearer-term needs because they must meet urgent needs and

---

3 http://www.defenselink.mil/pubs/dod101/dod101_for_2002.html

> requirements. Consequently, a large organization like the DoD needs a place like DARPA whose only charter is radical innovation.

Statement by Tony Tether, Director DARPA, to Subcommittee on Terrorism, Unconventional Threats and Capabilities; House Armed Service Committee, U.S. House of Representatives March 10, 2005 (emphasis added).[4] Over the years, DARPA has continued to adhere to its founding principles, including that "all [of its] efforts typically [are] 3-5 years long with strong focus on end-goals."[5] While DARPA's mission may support national security, DARPA does not have a specific operational mission, and therefore, DARPA is not involved in DoD's "urgent needs and requirements" to meet nearer-term operational missions. Given the uniqueness of DARPA's longer-term, non-operational mission, DARPA has not set forth a sufficient record to explain why a weakness in national security would result from a 3-month stay in BAI's performance. Furthermore, as set forth below, DARPA has failed to address, or establish, why BAI was the only contractor that could provide these services.[6]

In contrast to DARPA's vague reliance on its stated mission to avoid judicial review, in *Kropp Holdings*, the Defense Energy Support Center ("DESC") of the Defense Logistics Agency did not merely repeat the mission, role and "strategic thrusts" of the agency, as DARPA did in its Determination and Findings. Opp. at 3. DESC set forth a very detailed explanation why its worldwide acquisition and distribution of fuel at commercial airports and seaports for current DoD operational missions required an override of the CICA stay. *Id.* at 546. DESC explained that even if it issued a sole-source bridge contract to the predecessor contractor, it would suffer consequences

---

4 http://www.darpa.mil/body/news/2005/darpa_hasc_3_10_05_final.pdf (at 1).

5 http://www.darpa.mil/body/overtheyears.html

6 It is not sufficient to explain why the services are needed on an urgent and compelling basis. "Instead, that finding must also explain *why it is necessary to use the services of the awardee* under the disputed contract." Sukol at 450 (emphasis added).

affecting the national security of the United States if it stayed the awardee's performance for three months. *Id.* at 546-547. DESC established that the consequences of a stay included reverting to paper-based local purchases, which are "costly and inefficient, prone to mistakes, misunderstandings, and dissatisfied customers and vendors alike." *Id.* at 546. Without an override, DESC also would have lost coverage of its SEA Card program to acquire fuel at seaports. *Id.* DESC also set forth other justifications that are not set forth in the public version of the *Kropp Holdings* decision, including the consequences of having to notify vendors that they should accept expired AIR Cards to purchase fuel. *Id.* at 547. Without a contract in place, aircraft and vessels deployed around the world fighting the war on terror could have been refused fuel service. *Id.* at 549 n.11.

In contrast, DARPA's Combined D&F sets forth no explanation why the national security would be endangered if BAI's performance were stayed for three months, or why a sole-source bridge contract would be insufficient to resolve its national security concerns. Given its complete failure to explain why that national security would be endangered if a stay were effected, the Court should not blindly accept DARPA's complete reliance on a rubber stamp of "national security" to avoid having to justify its override decision.

### C. Maden Tech is Entitled to Declaratory Relief Because DARPA's Override Decision was Arbitrary and Capricious

#### 1. The Standards of Review for Declaratory Relief

In *Kropp Holdings*, this Court set forth the standards of review in override cases.

> In *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415-17, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), the United States Supreme Court set forth a precise and detailed analysis of the appropriate "standards" of review to be applied by a court reviewing agency determinations. First, the court must ascertain whether the agency "acted within the scope of [its] authority." *Id.* at 415, 91 S.Ct. 814; *see also* 5 U.S.C. § 706(2)(C). Second, the court must determine that "the actual choice made [by the agency] was not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* at 416, 91 S.Ct. 814 (quoting 5 U.S.C. § 706(2)(A)). Under the latter standard, the court must determine "whether the decision was based

> on a consideration of the relevant factors and whether there has been a *clear error of judgment*." *Id.* (emphasis added). Therefore, in agency override cases, the court must first determine whether the head of the agency's decision to issue an override was within the scope of its authority under 31 U.S.C. § 3553(d)(3)(C) and, if so, whether, based on the relevant facts to *that* decision (not the underlying procurement official's decision to award the contract or procedure utilized), there has been "no clear error of judgment." *See* Sukol at 448-49 (discussing the applicability of the standards of review utilized in *Overton Park* to agency override determinations).

63 Fed. Cl. at 551. These standards of review apply here.

### 2. The DARPA Officials Who Issued the Override Determinations Lacked Authority

The DARPA officials who signed the D&F and the Supplemental D&F did not have the authority to override the statutory stay of performance. CICA states "[t]he head of the procuring activity may authorize the performance of the contract (notwithstanding a protest of which the Federal agency has notice under this section)." 31 U.S.C. § 3553(d)(3). Additionally, the Federal Acquisition Regulation provides that "the head of the contracting authority may, on a nondelegable basis," authorize performance of a contract notwithstanding the automatic stay provisions. FAR 33.104(c)(2).

Pursuant to Department of Defense Directive Number 5134.10 issued February 17, 1995, the Director of DARPA is specifically delegated authority to "serve as Head of an Agency and Contracting Activity within the meaning of, and subject to the limitations of, FAR 2.1, as supplemented by DFARS, Subpart 202.1." *Id.* at ¶ 6.4. Therefore, the DARPA's Director is the only person who can authorize performance of a contract while a protest is pending at GAO.[7]

The initial D&F was executed by William Lehr as "Acting Director" of DARPA. Mr. Lehr is listed as the Comptroller on the DARPA directory. AR at 740. Dr. Anthony Tether was DARPA's Director when the D&F was executed, and there is no evidence in the administrative

---

7 DoD Directive No. 5134.10, ¶ 6.4, appears to violate FAR 33.104(c)(2) by improperly "delegating" authority to the DARPA Director to act as the HCA. Therefore, DARPA's Director also lacks authority to override a CICA stay.

record that Dr. Tether was divested of authority by temporarily appointing Mr. Lehr as the Acting Director of DARPA. Thus, a DARPA employee who did not have the statutory or regulatory authority to override a CICA stay executed the D&F.

Robert Leheny executed the Supplemental D&F, indicating that he was signing it "for AJT." Mr. Leheny is listed is the Deputy Director of DARPA. AR at 740. As the authority to issue an override is "nondelegable," Mr. Leheny did not have the authority to execute the Supplemental D&F on Dr. Tether's behalf. Further, Mr. Leheny did not explain whether he agreed with each basis upon which the D&F was initially executed.

Because Mr. Lehr and Mr. Leheny did not have the authority to override the CICA stay, DARPA did not act within the scope of its authority. Therefore, DARPA's override was arbitrary and capricious. *Overton Park*, 401 U.S. at 415; *Kropp Holdings*, 63 Fed. Cl. at 551.

Even if, after an evidentiary hearing, the Court were to determine that the Director of DARPA considered the administrative record and personally made the override decision, the Supplemental D&F cannot correct the erroneous D&F executed by DARPA's comptroller. In *Advanced Sys. Dev, Inc. v. United States*, No. 06-484 (Fed. Cl., Jul. 21, 2006), the Court stated that there is "no authority for the proposition that the override determination can be an evolving document .... The text of the statute does not support a reading that the override can precede the statutory justification." Therefore, even if DARPA subsequently obtained the Director's concurrence with the earlier override decision, it was too late to rectify the agency's arbitrary and capricious action.

### 3. Even if It Had Acted Within the Scope of Its Authority, DARPA's Override Was Not Based on the Relevant Factors

DARPA did not base its override determination on any claim that BAI's continued performance is in the best interests of the United States. Instead, DARPA cites only "urgent and compelling circumstances" allegedly requiring BAI's continued performance during the protest period. Combined D&F, Determinations. To meet this standard to override the CICA stay,



4825222

DARPA must establish that "urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General concerning the protest.'" *Cigna Gov't Servs.*, 70 Fed. Cl. at 110, citing 31 U.S.C. § 3553(d)(3)(C).

In its Combined D&F, DARPA failed to address two fundamental questions in determining whether there is an urgent and compelling reason for continuing performance despite the protest:

(a) What would happen if the performance under the protested contract were not allowed to continue?

(b) What impact does this have on readiness?

43 Admin. L. Rev. 439, 454. As set forth above, DARPA's blanket invocation of "national security" does not answer these questions. The other information set forth in the Combined D&F also does not answer these questions. DARPA's Combined D&F also fails to explain how urgent and compelling circumstances "will not permit waiting [three months] for the decision of the Comptroller General concerning the protest." 31 U.S.C. § 3553(d)(3)(C). Therefore, DARPA's Combined D&F reflects that the agency did not consider "the relevant factors" in overriding the statutory stay. *Kropp Holdings*, 63 Fed. Cl. at 551.

In an attempt to remedy this void in the Government's override decision, the Government attempts to set forth new information by arguing, for the first time, that DARPA could not perform the security services or continue to operate absent BAI's continued performance. Opp. at 8. The Government also attempts to put forth additional evidence outside the administrative record by attaching an affidavit executed after the D&F and the Supplemental D&F were executed. Opp., Ex. B. The Government's attempt to expand the justification for issuing an override is improper. The Combined D&F "must contain all relevant factors" and "cannot be remedied after the override decision is made." 43 Admin. L. Rev. 439. Moreover, the Government is precluded from offering "affidavits that ... are merely 'post hoc' rationalizations" to support its blanket assertion of urgency. *Citizens to Preserve Overton Park*, 401 U.S. 402, 416-419 (1971); *Kropp Holdings*, 63 Fed. Cl. at 552 n.13

(court will disregard post-authorization justifications); *Advanced Sys. Dev, Inc. v. United States*, No. 06-484 (Fed. Cl., Jul. 21, 2006) (refusing to consider new justifications for the override because, *inter alia*, "The evidence offered by the Government with its responsive pleading is 'no more than a litigation position to which no deference is due.'").

The only remaining basis on which DARPA attempts to justify its override decision is its claim in the D&F that Maden Tech's continued performance would "endanger the integrity of the procurement system by continuing an award the court had determined unlawful" and that it was required to override the stay unless it got "permission from the Federal Court of Claims." Exhibit A at ¶ o. Despite these assertions, DARPA never attempted to obtain the Court's "permission" to implement the statutorily required stay. Instead, Plaintiff was forced to seek the Judge Wolski's review. Upon receiving Plaintiff's motion contesting this basis for the override, Judge Wolski *immediately* confirmed that his orders did not "interfere with or complicate any protests concerning the re-procurement." Exhibit C at 2. Although he did not rule on the merits of DARPA's override decision, Judge Wolski also confirmed that his orders did not "prevent the government, if it felt it were necessary, from making any short-term extensions of the Maden Tech contract to facilitate the bid protest process." *Id.*[8]

Not only did Judge Wolski's August 8th Order establish that DARPA's reliance on his prior orders to override the CICA stay was a clear error of judgment, DARPA's D&F on this issue was improperly focused from the outset. An agency can override an automatic stay based on a reasoned analysis that urgent and compelling circumstances require it to not suspend *the awarded contract*, i.e., the award to BAI. DARPA's D&F, however, did not explain why a stay of BAI's contract would

8 Plaintiff takes issue with Intervenor's defamatory statement concerning Plaintiff's "singular lack of candor" regarding Judge Wolski's order. Int. Opp. at 24. Plaintiff set forth relevant portions of Judge Wolski's decision in its brief and attached the entire decision at Exhibit C, pages A-8 through A-10.

harm the interests of the government. Instead, it focused only on why *continuance of Maden Tech's bridge contract* was improper. This is not the standard as required by CICA. *See Universal Shipping Co. v. United States*, 652 F. Supp. 668, 675 (D.D.C. 1987) (agency's D&F must explain why suspension of the *awarded contract* would adversely affect the interests of the United States).

The Government's attempt to invoke public policy to claim that it would be improper to extend Maden Tech's bridge contract is equally unavailing. The Government cannot cite to any authority that the public policy underlying termination of an award deemed arbitrary and capricious outweighs the public policy established by Congress that stays of protested awards are required to preserve competition in contracting and ensure a fair and effective process at GAO. Defendant would have this Court create new law that any time an award is deemed arbitrary and capricious, the Government can automatically override a statutorily required stay of performance of a successor contract.

The Government's public policy argument is also untenable because, by the Government's own admission, "Maden was allowed to continue performing the contract for seven months after the court's decision that the award to Maden was arbitrary and capricious." Opp. at 17. When DARPA previously sought to extend Maden Tech's performance for a period of time *greater* than that required for the GAO to decide the pending protests, it did not advise the Court at that time that public policy reasons mandated terminating Maden Tech's performance as soon as possible. The Court also granted the Government's request without expressing any concern that the extension of Maden Tech's contract was contrary to the public interest. Given that the Government has permitted Maden Tech to perform its contract for seven months after the award was determined to be arbitrary and capricious, there is no justification for the Government to refuse extending the contract for another three months, particularly where Congress has enacted a statutory presumption that the awardee's performance will be stayed pending resolution of the GAO protest.

### D. DARPA and Intervenor Misstate the Standard of Review for Injunctive Relief

Defendant and Intervenor argue that Maden Tech must meet the four general requirements of a temporary restraining order or preliminary injunction to obtain injunctive relief in this case. That is not correct. In *Kropp Holdings*, this Court did not provide that the general injunctive relief elements must be shown in seeking injunctive relief on an override. The Court stated that the higher standard of review set forth in *Overton Park* (addressed above) "is particularly appropriate where an injunction is sought to end an override." *Kropp Holdings*, 63 Fed. Cl. at 551-52.

The *Kropp Holdings* analysis was confirmed in *Advanced Sys. Dev, Inc. v United States*, No. 06-484 (Fed. Cl., Jul. 21, 2006):

> Bid protests are generally brought before the Court on motions for preliminary injunction or on motions for a temporary restraining order. As a rule, when applying the four factors for injunctive relief, no single factor is dispositive and an inadequate showing regarding one factor may be overcome by the strength of the other factors. *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed.Cir.1993); *PGBA*, 57 Fed. Cl. at 656. There is, however, support for the theory that none of these requirements for injunctive relief applies to protests concerning a CICA override determination. Senior Judge Merow explains his analysis thusly:
>
>> If, as here, the agency override determination is, after application of the review standard prescribed by 28 U.S.C. § 1491(b)(4), determined to lack validity, declaratory relief so ruling serves to reinstate the statutory stay of contract performance, during the GAO protest period automatically provided under 31 U.S.C. § 3553(d)(3)(A). Congress did not require any evaluation of injunctive relief factors as a prerequisite to a stay of contract performance upon the filing of a protest with the GAO. Thus, it would be contrary to the legislative scheme to impose such an additional requirement, upon finding that an agency override determination lack [sic] validity, in order to reinstate the statutory stay applicable during the GAO protest period. Declaratory relief preserves the scheme that Congress enacted.
>
> *Chapman Law Firm Co. v. United States*, 65 Fed. Cl. 422, 424 (2005). There does seem to be some incongruity in forcing a plaintiff to meet the high burden necessary for obtaining extraordinary relief, when the statute gives presumptive weight to the otherwise required showings of irreparable harm and public interest.
>
> Judge Williams recognizes the same rule for reasons of practicality and efficiency:
>
> Because the declaratory judgment will reinstate the stay and vacate the override, having the same effect as an injunction, the Court does not reach the issue of

> injunctive relief. In so ruling, the Court has taken into account the necessity of resolving this matter expeditiously recognizing that each day that passes prolongs the time when the stay is not in effect.
>
> *Cigna*, 70 Fed. Cl. at 114.

The holdings of *Kropp Holdings*, *Advanced Sys. Dev*, and the prior cases on which they stand reveal that the Government's and Intervenor's attempts to create additional roadblocks for Plaintiff to prevail are simply acts of desperation.[9]

### E. The Government's Claim that It Cannot Extend the Predecessor Contract Even if It Violated the CICA Stay Is Wrong

The Government attempts to avoid the consequences of its erroneous override decision by claiming that "DARPA cannot extend at this time the previous contract to Maden" because it expired on July 31, 2006. Opp. at 23. To the contrary, the Court's determination that an override decision lacks a rational basis and is contrary to law has the effect of reinstating the statutory stay of contract performance as of the day the protest was filed. Because DARPA's CICA override was wholly improper, the court should return the parties to the *status quo ante* and, thus, the automatic stay of performance is necessarily restored. *See Advanced Sys. Dev, Inc. v United States*, No. 06-484 (Fed. Cl., Jul. 21, 2006); *Altos Federal Group, Inc. v United States*, 60 Fed. Cl. 832, 834-35 (2004) (rejecting Government argument that the predecessor contract expired).[10]

---

[9] The Government also inconsistently attempts to use the Court action involving the prior award to Maden Tech as both a sword and a shield, arguing that the August 8th Order is irrelevant, but that the Court's decision on BAI's request for a preliminary injunction should be followed here. In that case, however, the request for preliminary injunction at issue went to the *merits* of the underlying bid protest challenging the award to Maden Tech. Here, Maden Tech is not seeking injunctive relief concerning the merits of the underlying protest, but rather is contesting the merits of the improper override decision. Furthermore, the protest of the predecessor contract addressed different issues than those now before this Court, and the separate action has no bearing on whether DARPA properly issued an override of the statutory stay of the subsequent contract award. In contrast, the Court's August 8th Order did specifically address certain aspects of DARPA's override decision, and therefore, that particular order is relevant to this proceeding.

[10] Although the effect of setting aside an override is not a factor considered by the Court in determining whether an override decision was arbitrary and capricious, Plaintiff notes that DARPA's

The Government also cannot equitably secure any litigation advantage based on the relative timing of the award decision, debrief, protest, and override decision. Maden Tech was informed of the contract award (but not the start date) on July 19, 2006, and the next day, Maden Tech timely requested a debrief of the contract award. Exhibit D at ¶ 8. DARPA, however, scheduled Maden Tech's debrief for July 28, 2006, after BAI had already commenced performance. *Id.* Upon learning the grounds of its protest at the debrief, Maden Tech promptly filed its protest on the next business day. *Id.* at ¶ 9. DARPA cannot now benefit from its own delay in debriefing Maden Tech without setting a new precedent for agencies to avoid judicial scrutiny of their override decisions.

Finally, whether or not DARPA can extend Maden Tech's contract cannot after-the-fact justify its override decision. In *Universal Shipping*, the Court held that it "cannot divine a rational or reasonable basis for the agency's conclusion that the interests of the United States would be protected *only if the disputed contractor performed the contract*" because "the plaintiff is, *and others may be*, in a position to offer the services contracted for by [the awardee] on an interim basis." 652 F. Supp. at 675 (emphasis added). There is no obstacle preventing DARPA from having either Maden Tech or another contractor provide the services contracted for by BAI on an interim basis until the GAO renders its decision on or before November 8, 2006.[11]

## III. CONCLUSION

For the foregoing reasons, Maden Tech requests that the Honorable Court grant its motion and issue a declaratory judgment that DARPA's determination to override the automatic stay imposed under CICA, 31 U.S.C. § 3553, lacks a rational basis and is contrary to law. Maden Tech

---

Combined D&F addressed both STG's and Maden Tech's protests. STG's protest of the award to BAI was filed on July 28, 2006. DARPA was informed by GAO of the protest on July 31, 2006, effectuating the CICA stay before Maden Tech's contract expired.

11 Although DARPA could choose to use another DARPA contractor or to award a new interim contract, extending Maden Tech's bridge contract is the most logical option. Maden Tech provided exceptional performance to DARPA on the predecessor contract. Exhibit D at ¶ 7.

requests that the Court set aside the invalid override decision and reinstate the automatic stay. Maden Tech also requests that the Court issue a Temporary Restraining Order and Preliminary Injunction prohibiting DARPA from allowing work to proceed under Contract No. HR0011-06-C-0127 until a full resolution of the protests pending against that contract award before the Government Accountability Office.

Dated: August 23, 2006

Respectfully submitted,

s/ T. Michael Guiffré

T. Michael Guiffré
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6441
(202) 457-6315 (Fax)

Attorney of Record for
Maden Tech Consulting, Inc.

Of Counsel:
Robert S. Brams
Elizabeth M. Gill
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of August, 2006, I served via electronic mail Plaintiff's Reply to Defendant and Intervenor's Opposition to Plaintiff's Motion for a Temporary Restraining Order, Preliminary Injunction, and Declaratory Relief to:

Michael Dierberg, Esq.
U.S. Department of Justice
Civil Litigation Branch
Attn: Classification Unit
8th Floor
1100 L Street, NW
Washington D.C. 20530
Ph – 202-353-0536
Fax – 202-305-7644

Paul Pompeo, Esq.
Holland & Knight
2099 Pennsylvania Avenue, NW
Suite 100
Washington, D.C. 20006
Ph – 202-828-1881
Fax – 202-419-2913

s/ T. Michael Guiffré

T. Michael Guiffré