# In the United States Court of Federal Claims

No. 06-585C
(Consolidated with Case No. 06-612C)
Filed December 29, 2006
**TO BE PUBLISHED**

| | |
|---|---|
| MADEN TECH CONSULTING INC., Plaintiff, | |
| v. | Administrative Procedures Act, 5 U.S.C. § 706(2)(A); Competition in Contracting Act, 31 U.S.C. § 3553; Consolidation, RCFC 42(a); Related Case, RCFC 40.2. |
| THE UNITED STATES, Defendant, and | |
| BETA ANALYTICS INTERNATIONAL, INC., Defendant-Intervenor. | |

**Thomas M. Guiffre**, Patton Boggs, LLP, Washington, D.C., for Plaintiff.

**Michael J. Dierberg**, United States Department of Justice, Washington, D.C., for Defendant.

**Paul E. Pompeo**, Holland & Knight, LLP, Washington, D.C., for Intervenor.

## MEMORANDUM OPINION AND FINAL JUDGMENT

**BRADEN**, *Judge*.

This post-award bid protest concerns a procurement for security services by the Defense Advanced Research Project Agency ("DARPA"). An earlier procurement for these services was the subject of litigation in the United States Court of Federal Claims in a case assigned to the Honorable Victor J. Wolski. *See Beta Analytics Int'l* v. *United States*, 67 Fed. Cl. 384 (2005) ("*Beta Analytics I*"); *Beta Analytics Int'l* v. *United States*, 69 Fed. Cl. 431 (2005) ("*Beta Analytics II*"). In the prior litigation, the court ruled that DARPA acted arbitrarily and capriciously in awarding a contract to Maden Tech Consulting, Inc. ("Maden Tech") and ordered a new procurement. *See Beta Analytics*

*I*, 67 Fed. Cl. at 408. This case involves Maden Tech's challenge to DARPA's second procurement for these services.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY.[1]

### A. *Maden Tech Consulting, Inc.* v. *United States*, No. 06-585C.

On February 13, 2006, DARPA[2] issued Solicitation No. HR0011-06-R-0001 ("the Solicitation") to procure "support services [for the] Security and Intelligence Directorate[3] . . . under the Office of Management Operations[.]" AR 659-739; *see also Beta Analytics II*, 69 Fed. Cl. at 434-35 ("The United States shall conduct a re-procurement . . . upon a time schedule that will allow the new contract to be awarded and a start date of April 10, 2006[.]"). The Solicitation provided that the "contractor shall provide and manage personnel and equipment . . . to safeguard DARPA, US Government, and other resident property, personnel, and information and to assure continuity of the DARPA work effort." *Id*. at 666. The Solicitation was for a Cost-Plus-Award-Fee contract, with a single-year base term, and four one-year options. *Id*. at 697, 701, 720. Initially, the Solicitation anticipated an award/start date of April 10, 2006, however, DARPA amended the Solicitation on April 17, 2006, changing the award/start date to June 1, 2006. *Id*. at 697. The Solicitation again was amended on May 31, 2006, changing the award date to June 15, 2006 and the start date to July 1, 2006. *Id*.

On July 19, 2006, DARPA notified Maden Tech, the incumbent contractor, that Beta Analytics International, Inc. ("BAI" or "Intervenor"), was awarded the contract. *See* Compl. ¶ 12. At Maden Tech's request, on July 28, 2006, DARPA conducted a procurement debriefing. *Id*. ¶ 13. On July 31, 2006, Maden Tech filed a bid protest (No. B-298543.2) with the Government Accountability Office ("GAO"). *Id*. ¶ 14. On July 28, 2006, another bidder, STG, Inc., also filed a GAO protest (Nos. B-298543, 298543.3). *Id*. ¶ 15.

---

[1] The relevant facts herein are derived from: the Administrative Record ("AR __"); Plaintiff's August 11, 2006 Complaint ("Compl."); Plaintiff's August 11, 2006 Motion for Temporary Restraining Order, Preliminary Injunction and Declaratory Relief ("Pl. Mot.") and exhibits thereto (Pl. Mot. Ex. __"); the August 25, 2006 Oral Argument ("TR"); and Plaintiff's August 31, 2006 Complaint (Compl. II) and exhibits thereto (Compl. II Ex. __").

[2] DARPA's mission is to "maintain the technological superiority of the U.S. military and prevent technological surprise from harming our national security by sponsoring revolutionary, high-payoff research that bridges the gap between fundamental discoveries and their military use." AR 665.

[3] The Security and Intelligence Directorate ("SID") "facilitate[s] the secure and successful accomplishment of DARPA's mission [by] protecting DARPA personnel, information, property, and insuring business continuity." AR 666.

On August 1, 2006, DARPA issued a Determination and Finding ("Initial D&F") overriding the statutory stay of performance, allowing BAI to commence performance of the contract. *See* Pl. Mot. Ex. A; *see also* 31 U.S.C. § 3553(d)(3)(A) ("If the Federal agency awarding the contract receives notice of a protest in accordance with this section . . . the contracting officer may not authorize performance of the contract to begin while the protest is pending[.]"); 48 C.F.R. § 33.104(c)(1) ("When the agency receives notice of a protest from the GAO . . . the contracting officer shall immediately suspend performance or terminate the awarded contract[.]"). In the Initial D&F, the Acting DARPA Director determined that "urgent and compelling circumstances significantly affecting the interests of the United States will not permit waiting for the decision of the Comptroller General." Pl. Mot. Ex. A at A-4; *see also* 31 U.S.C. § 3553(d)(3)(C) (allowing an agency head to override the mandatory stay in contract performance upon determination that "performance of the contract is in the best interests of the United States" or "urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting" for the GAO's resolution of the bid protest).

The August 1, 2006 Initial D&F set forth three bases for overriding the automatic stay. First, the scope of DARPA's and SID's missions. *Id*. at A-2, A-3. Second, the procedures DARPA followed in this particular procurement. *Id*. at A-3. Third, DARPA's conclusion that it "cannot have the previous contractor, Maden [Tech], . . . continue performance, because the [United States] Court of Federal Claims determined that the award to Maden [Tech] was arbitrary and capricious." *Id*. at A-3 (referencing Judge Wolski's decision in *Beta Analytics I.*)

On August 4, 2006, DARPA issued a Supplemental Determination and Finding ("Supplemental D&F") elaborating on DARPA's mission, citing additional organizational responsibilities, and concluding that:

> [[i]n fulfilling these nationally important responsibilities, it is absolutely critical to the agency's mission for security services to be in place. The award to [BAI] requires the contractor to be responsible for supplying critical security services to DARPA and in turn to the national security. I determine that urgent and compelling circumstances significantly affecting the interests of the United States will not permit waiting for the decision of the Comptroller General.

Pl. Mot. Ex. B at A-7.[4]

On August 11, 2006, Maden Tech timely filed a Complaint in the United States Court of Federal Claims requesting that the court: (1) declare that DARPA's decision to override the stay on contract performance was invalid; (2) enjoin DARPA from allowing BAI to perform the contract during the pendency of the GAO protest; and (3) grant requested attorneys fees and costs. *See*

---

[4] The Supplemental D&F, however, noted: "The Director of Special Access Program was unavailable until today to give input on the need to continue services under the contract." *Id*. at A-6 n.1.

Compl. (Request for Relief) ¶¶ 1-3. The case was designated as Docket Number 06-585C and assigned to the undersigned judge.[5] On that same day, Maden Tech filed a Motion for a Temporary Restraining Order, Preliminary Injunction, and Declaratory Relief. On August 11, 2006 and August 14, 2006, the court convened telephone status conferences with the parties. On August 14, 2006, the Government filed a Notice of Proposed Schedule.

On August 15, 2006, BAI filed an unopposed Motion to Intervene and an unopposed Amended Motion to Intervene. On that same day, the court issued a Scheduling Order and an Order granting BAI's Amended Motion to Intervene. On August 16, 2006, Maden Tech filed a Motion for a Protective Order, which the court entered. On August 18, 2006, the court issued an Order Amending the Protective Order. On August 18, 2006, the Government filed the Administrative Record. On August 22, 2006, the Government filed a Response to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. On that day, Intervenor BAI also filed a Response to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. On August 23, 2006, Plaintiff filed a Reply to the Government's and Intervenor's Responses. On August 23, 2006, Plaintiff filed a witness list.

On August 25, 2006, a hearing was held on Plaintiff's Motion for a Temporary Restraining Order, Preliminary Injunction, and Declaratory Relief. At the conclusion of the hearing, the court ruled that the Initial D&F and the Supplemental D&F failed to provide a sufficient basis under 5 U.S.C. § 706(2)(A) for DARPA to override the mandatory stay. *See* TR at 92-96; *see also* Order, *Maden Tech Consulting* v. *United States*, No. 06-585C (Aug. 28, 2006). On August 28, 2006, the court issued an Order, under seal, holding that DARPA's override of the automatic stay was contrary to law, because the Initial D&F and the Supplemental D&F "d[id] not provide the court with a sufficient basis to ascertain whether the agency has complied with 28 U.S.C. § 1491(b)(4)." *See* Order, *Maden Tech Consulting Inc.* v. *United States*, No. 06-585 (Fed. Cl. August 28, 2006) (citing 5 U.S.C. § 706(2)(A)). The court also held that "the automatic stay in DARPA's performance of Contract No. HR0011-06-C-0127 during the pendency of [Maden Tech's] bid protest before the General Accountability Office is reinstated." *Id.* (citing 31 U.S.C. § 3553(d)(3)(A)(ii)). In addition, the court ordered "the Director of DARPA, General Counsel, Assistant General Counsel, and all agency lawyers responsible for determining the appropriateness of issuing an agency override . . . read Judith A. Sokol, *The Competition in Contracting Act's Automatic Stay Provision and Judicial Review: A Trap for the Unwary*, 43 ADMIN. L. REV. 439 (1991) to assist them in ascertaining whether or not to issue a decision to override an automatic stay in the future . . . and [determining whether] the required elements [existed] to provide the court with requisite findings on which to base a decision of compliance with 28 U.S.C. § 1491(b)(4)." *Id.* The court also denied Maden Tech's Motion for a Temporary Restraining Order and a Preliminary Injunction.

---

[5] Before agreeing to the assignment of *Maden Tech Consulting, Inc.* v. *United States*, No. 06-585C, the undersigned judge consulted with Judge Wolski, who presided in *Beta Analytics Int'l, Inc.* v. *United States*, No. 04-556C. *See* RCFC 40.2.

On November 20, 2006, Plaintiff filed a Motion for Attorneys Fees under the Equal Access to Justice Act.

**B. *Maden Tech Consulting, Inc.* v. *United States*, No. 06-612C.**

On August 28, 2006, DARPA issued a Third Determination and Finding ("Third D&F"). The Third D&F explained the specific nexus between DARPA's mission to the on-going military operations in Iraq and Afghanistan. *See* Compl. II Ex. C at 2. The Third D&F also detailed the breadth of the agency's security requirements stating that "DARPA has approximately 120 ongoing special access programs . . . spread over 320 different facilities, with over 400 users. *Id*. In addition, the Third D&F represented that DARPA's SID was "thinly staffed, with approximately a dozen employees" that relied heavily on the contractor's employees to carry out its mission. *Id*. at 5. The Third D&F also listed five options considered by the Agency:

1. Perform the work in-house with current staff;

2. Perform the work in-house by hiring additional staff;

3. Conduct a mini-competition for the services pending the GAO decision;

4. Award an interim contract to Plaintiff pending the GAO decision; and

5. Override the stay on contract performance.

*Id*. at 7-8.

Based on this analysis, DARPA concluded that the override was "the only practical and effective option available[.]" *Id*. at 8.

On August 31, 2006, after DARPA issued a Third D&F overriding the automatic stay, Maden Tech filed a second Complaint in the United States Court of Federal Claims seeking: 1) a declaration that "DARPA's decision to override and lift the automatic stay of performance was arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law;" 2) a preliminary injunction prohibiting DARPA from allowing performance under the contract "until the court rules on the merits of Maden Tech's request for declaratory judgment;" and 3) attorneys fees and costs. *See* Compl. II (Request for Relief) ¶¶ 1-3. That case was designated as Docket Number 06-612C and assigned to the undersigned judge.[6] On that same day, Maden Tech also filed a Motion for Preliminary Injunction and Declaratory Relief, as well as Motion for a Protective Order.

---

[6] Again, before agreeing to the assignment of *Maden Tech Consulting, Inc.* v. *United States*, No. 06-612C, the undersigned judge consulted with Judge Wolski. *See* RCFC 40.2.

On September 1, 2006, the court convened a telephone status conference with the parties. On that date, BAI also filed an unopposed Motion to Intervene. On September 5, 2006, the court issued a Protective Order and granted BAI's Motion to Intervene. On the same day, the court convened a telephone status conference with the parties. On September 6, 2006, the court issued a Scheduling Order and an Amended Protective Order. On September 13, 2006, the court convened another telephone status conference with the parties. On the same day, the Government filed both a Response to Plaintiff's Motion for Preliminary Injunction, Declaratory Relief, and the Administrative Record. On September 14, 2006, the Intervenor filed a Response to Plaintiff's Motion for Preliminary Injunction and Declaratory Relief. On September 22, 2006, Plaintiff filed a Reply.

On October 30, 2006, the GAO issued an opinion denying both Maden Tech's and STG, Inc.'s bid protests. *See Matter of Maden Technologies*, B-298,543.2, 2006 WL 3490803 (Comp. Gen. Oct. 30, 2006); *Matter of STG, Inc.*, B-298,543, B-298,543.3, 2006 WL 3490581 (Comp. Gen. Oct. 30, 2006).

## III. DISCUSSION.

### A. Jurisdiction.

The United States Court of Federal Claims has jurisdiction over a bid protest filed after a contract has been awarded. *See* 28 U.S.C. § 1491(b)(1) ("Both the Unite[d] States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded."). The United States Court of Federal Claims is further vested with the authority to "award any relief that the court considers proper, including declaratory and injunctive relief[.]" 28 U.S.C. § 1491(b)(2).

The United States Court of Appeals for the Federal Circuit recognized that 28 U.S.C. § 1491(b) authorizes the United States Court of Federal Claims to hear objections to an override of the statutory stay, pursuant to the Competition in Contracting Act, 31 U.S.C. § 3553. *See RAMCOR Servs. Group* v. *United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999). This jurisdiction extends to override determinations "premised upon asserted 'best interests of the United States' as well as those based upon asserted 'urgent and compelling circumstances that significantly affect interests of the United States.'" *Chapman Law Firm Co.* v. *United States*, 62 Fed. Cl. 464, 466 (2004) (citing *PGBA, LLC* v. *United States*, 57 Fed. Cl. 655, 659 (2003)).

Congress, however, has qualified the court's jurisdiction, instructing that "[i]n exercising jurisdiction [to objections to an Agency override], the courts shall give *due regard to the interests*

*of national defense and national security*[.]" 28 U.S.C. § 1491(b)(3) (emphasis added). In the context of reviewing an agency override of an automatic stay in connection with a procurement, the undersigned judge has held that "where legitimate 'interests of national defense and national security' have been asserted and established to the court's satisfaction, it is 'not necessary' for the court to reach the merits of whether 31 U.S.C. § 3553(d)(3)(C)(i) is violated." *Kropp Holdings, Inc.* v. *United States*, 63 Fed. Cl. 537, 549 (2005).

**B. Standard For Review.**

The court reviews the merits of the override decision under the standards set forth in the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A). *See* 28 U.S.C. § 1491(b)(4) ("In any action under this subsection [*i.e.* in connection with a bid protest], the courts shall review the agency's decision pursuant to the standards set for in section 706 of title 5."). In *Citizens to Preserve Overton Park, Inc.* v. *Volpe*, 401 U.S. 402 (1971), the United States Supreme Court explained:

> Section 706(2)(A) requires a finding that the actual choice made was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Id*. at 416.

The United States Supreme Court also has held that the trial court's APA review should focus on the factual basis for the agency's action in order to ensure that it is supported by adequate facts on the record. *See Motor Vehicle Mfrs. Ass'n of the United States* v. *State Farm Ins. Co.*, 463 U.S. 29, 43 (1983) ("[A]n agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.").

**C. Case 06-585C And Case 06-612C Should Be Consolidated.**

Rule 42(a) of the Rules of the United States Court of Federal Claims ("RCFC") provides:

> When *actions involving a common question of law or fact* are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it *may* order all the actions consolidated; and it may make such orders concerning proceedings therein as may *tend to avoid unnecessary costs or delay*.

RCFC 42(a) (emphasis added); *see also Cienega Gardens* v. *United States*, 62 Fed. Cl. 28, 32 (2004) (holding that two inquiries are required to determine whether consolidation should be granted: first, whether a "common question of law or fact" exists in both cases; and second, whether considerations regarding "the interest of judicial economy [outweigh] the potential for delay, confusion and prejudice that may result from consolidation").

The court has determined that consolidation of *Maden Tech Consulting Inc.* v. *United States*, No. 06-585C and *Maden Tech Consulting Inc.* v. *United States*, No. 06-612C is appropriate under RCFC 42(a), because: both cases involve common questions of law and fact; both cases arise from a dispute over the Government's decision to override the automatic stay resulting from a GAO bid protest from the same procurement; and judicial economies will be achieved through the consolidation of Case No. 06-585C and Case No. 06-612C.

### D. The Court's Resolution Case 06-585C And Case No. 06-612C, As Consolidated.

#### 1. Declaratory Relief.

##### a. Regarding The Government's August 1, 2006 Determination And Finding, As Supplemented On August 4, 2006.

The Government's primary substantive justification initially for overriding the automatic stay was a concern that the stay would conflict with the court-ordered re-procurement in *Beta Analytics I*. *See* Pl. Mot. Ex. A at A-3 ("To ask [Plaintiff] to continue performance would not be in the best interest of the Government and would endanger the integrity of the procurement system by continuing an award the court has determined unlawful. In addition, if DARPA wanted to continue the performance by Maden, permission from the Federal Court of Claims would be required."). On August 8, 2006, however, Judge Wolski issued an Order specifically addressing this very concern:

> [i]n enjoining the Government from "exercising another option year," the Court did not intend to prevent the Government, if it felt it were necessary, from making any short-term extensions of the Maden Tech contract to facilitate the bid protest process.

Order, *Beta Analytics Int'l* v. *United States*, No. 04-556C (Fed. Cl. Aug. 8, 2006).

Since Judge Wolski's Order advised the parties that the court did not intend to micromanage the re-procurement, DARPA was required to justify the decision to override the automatic stay on other grounds. Unfortunately, neither the Initial D&F nor the Supplemental D&F provided findings sufficient to justify DARPA's action. Without a statement of findings that detail the "urgent and compelling circumstances that significantly affect interests of the United States," the court cannot uphold an agency's decision to override the mandatory stay in performance. *See* 31 U.S.C. § 3553 (d)(3)(C)(ii) (providing that the head of an agency may override the automatic stay in contract performance upon written determination that "urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller

General concerning the protest"). Therefore, as previously discussed, on August 28, 2006, the court held:

> Based on the Administrative Record, motions and memoranda filed by the parties, and argument presented at an August 25, 2006 hearing, the court has determined that [DARPA]'s August 1, 2006 Determination and Finding, as supplemented on August 4, 2006, to override the automatic stay authorized under the Competition in Contracting Act is contrary to law in that it does not provide the court with a sufficient basis to ascertain whether the agency has complied with 28 U.S.C. § 1491(b)(4).

Order, *Maden Tech Consulting, Inc.* v. *United States*, No. 06-585 (Fed. Cl. Aug. 28, 2006) (citing 5 U.S.C. § 706(2)(A)).

**b. Regarding The Government's August 28, 2006 Determination And Finding.**

In *Kropp Holdings*, 63 Fed. Cl. at 537 (Fed. Cl. 2005) the undersigned judge previously held that:

> where "legitimate interests of national defense and national security" have been asserted and established to the court's satisfaction . . . the circumstances under which the United States Court of Federal Claims should find it 'necessary' to reach the merits of an override decision should be the exception, not the rule.

*Id*. at 549.

In that case, the Defense Energy Support Center of the Defense Logistics Agency provided the court with a detailed description of why the agency's override of the automatic stay was necessary for national security purposes. The procurement in that case involved credit card support for the military's purchase of aviation and bunker fuel worldwide. *Id*. at 541-42. There the Government also explained that unless the override remained in effect, at a minimum, the Government would suffer significant additional expenses related to the fuel program and military aircraft or ships could even be refused fuel service during a time of war. *Id*. at 546-47, 549 n.11.

In this case, DARPA's Third D&F provided a sufficient factual basis for the court to determine that legitimate interests of national defense and national security were implicated in this procurement, because DARPA issued the following findings:

> f. [DARPA's] current strategic thrusts are (1) detection, precision ID, tracking, and destruction of elusive targets; (2) robust, secure self-forming tactical networks; (3) networked manned and unmanned systems; (4) urban area operations; (5) detection, characterization, and assessment of underground

structures; (6) assured use of space; (7) cognitive computing; and (8) bio-revolution.

g. *Many of DARPA's programs have led to innovations currently being utilized in our operations in Iraq and elsewhere.* For example, after consultation with Marine Corps officials, DARPA assembled a quick-reaction program designed to develop a system capable of determining the direction from which shots are fired at a moving vehicle. This led to the development of the Boomerang shooter detection system, currently deployed in Iraq.

h. *In addition, several of DARPA's strategic thrusts are directed at addressing the specific type of challenges currently facing our armed services in Iraq and Afghanistan.*

* * *

j. The contract, in this case, calls for the provision of services to DARPA's Security and Intelligence Directorate. The Security and Intelligence Directorate is responsible for ensuring the security of DARPA's information and programs. SID has enormous responsibility within DARPA. DARPA has approximately 120 ongoing Special Access Programs (SAP). These SAPs are spread over 320 different facilities, with over 400 users (companies, organizations, academic institutions, agencies, etc.) performing work related to SAP programs at one of these facilities.

k. *The information generated or exchanged by DARPA and the 400 users connected to SAPs must be protected from improper disclosure at every step of the process. . . .*

* * *

n. *The security requirements fulfilled by the subject contract are not just good practices; they are mandated by statute, regulation, executive orders, and Department of Defense Directives. . . .*

o. *As indicated above, these services are critical in order for DARPA to perform its mission and to protest classified information from being leaked, which would endanger National Security.*

p. *Without these services, DARPA's effectiveness would be substantially diminished and 90% of DARPA's work on classified information would have to cease. This would cause serious harm to DARPA and National Security*

> by delaying work on projects that are, in both the immediate and long-term future assist our military in defending this country.

Pl. Mot. Ex. C at 2-6 (emphasis added).

Because DARPA subsequently established that these contract services involve legitimate interests of national defense and national security, the court has determined that it was not necessary to review the merits of the agency's decision to override the automatic stay. *See Kropp*, 63 Fed. Cl. at 548-49 (holding that when a "court has determined that where legitimate "interests of national defense and national security" are raised and established to the court's satisfaction, the circumstances under which the United States Court of Federal Claims should find it 'necessary' to reach the merits of an override decision should be the exception, rather than the rule").

Assuming *arguendo* that the court should exercise such jurisdiction, the October 30, 2006 GAO decision denying Maden Tech's bid protest nevertheless renders DARPA's Third D&F moot. *See Matter of Maden Technologies*, B-298,543.2, 2006 WL 3490803 (Comp. Gen. Oct. 30, 2006).

**2. Injunctive Relief.**

In response to Maden Tech's August 11, 2006 Motion for a Temporary Restraining Order, Preliminary Injunction and Declaratory Relief, the court determined that DARPA's initial override was contrary to law. *See* Order, *Maden Tech Consulting, Inc.* v. *United States*, No. 06-585 (Fed. Cl. Aug. 28, 2006). The effect of the August 28, 2006 Order was to nullify DARPA's override, automatically reinstating the statutory stay on contract performance. Therefore, Plaintiff's request for further injunctive relief is denied as moot. *See Advanced Sys. Dev., Inc.* v. *United States*, 72 Fed. Cl 25, 36-37 (2006) ("[D]espite the fact that Plaintiff requests an injunction, we find that a declaratory judgment achieves the same effect. By concluding, as we do, that the agency's CICA override lacks a rational basis and is contrary to law, we return the parties to the *status quo ante*-the automatic stay of performance is necessarily restored."); *see also CIGNA Gov't Svcs.* v. *United States*, 70 Fed. Cl. 100 (2006) ("Because the declaratory judgment [declaring the override decision invalid] will reinstate the stay and vacate the override, having the same effect as an injunction, the Court does not reach the issue of injunctive relief. ").

With regard to Maden Tech's August 31, 2006 Motion for Preliminary Injunction and Declaratory Relief, DARPA has established that this procurement involves legitimate interests of national defense and national security. Accordingly, the court declines to exercise jurisdiction under these circumstances. *See Kropp Holdings, Inc.*, 63 Fed. Cl. at 548-49. Assuming *arguendo* that the court should exercise such jurisdiction, the October 30, 2006 GAO decision denying Maden Tech's bid protest renders DARPA's Third D&F moot. *See Matter of Maden Technologies*, B-298,543.2, 2006 WL 3490803 (Comp. Gen. Oct. 30, 2006).

## IV. CONCLUSION.

Based on the foregoing reasons, the court has determined that DARPA's August 1, 2006 Determination and Finding, as supplemented on August 4, 2006, to override the automatic stay authorized under the Competition in Contracting Act is contrary to law. DARPA, however, subsequently established in a Third D&F that the contract services at issue in this bid protest involved legitimate interests of national defense and national security. Therefore, the court has declined to exercise jurisdiction regarding the agency's decision to override the automatic stay under these circumstances.

Accordingly, Plaintiff's August 11, 2006 Motion for Declaratory Judgment is granted and Plaintiff's August 11, 2006 Motion for a Temporary Restraining Order and Preliminary Injunction is denied. Plaintiff's August 31, 2006 Motion for Temporary Restraining Order, Preliminary Injunction, and Declaratory Relief is denied. Plaintiff's November 20, 2006 Motion for Attorney's Fees is denied. *See Rice Servs., Ltd.* v. *United States*, 405 F.3d 1017, 1026 (Fed. Cir. 2005) (holding that "in order to be deemed a 'prevailing party[,]' a plaintiff [must] have obtained a court order carrying sufficient 'judicial imprimatur' to materially change the legal relationship of the parties.").

**IT IS SO ORDERED.**

s/Susan G. Braden
SUSAN G. BRADEN
Judge